**EASTERN KENTUCKY RESOURCES,**
Appellant,

v.

**Patty ARNETT and Dr. Charles
E. Hardin, Jr., Appellees.**

**Patty ARNETT and Dr. Charles
E. Hardin, Appellants,**

v.

**EASTERN KENTUCKY RESOURCES,**
Appellee.

Nos. 93–CA–2158–MR, 93–CA–2160–MR.

Court of Appeals of Kentucky.

Feb. 24, 1995.

Richard A. Getty, C. Thomas Ezzell, Bowles, Rice, McDavid, Graff, Love & Getty, Lexington, for Eastern Kentucky Resources.

Gordon B. Long, Salyersville, Ned Pillersdorf, Prestonsburg, for Hardin and Arnett.

Before HOWERTON, JOHNSTONE and WILHOIT, JJ.

WILHOIT, Judge.

These appeals are from summary judgments dismissing the complaint of Eastern Kentucky Resources and the counterclaim of Ms. Patty Arnett and Dr. Charles E. Hardin. This litigation is inextricably intertwined with a civil suit filed less than a week prior to Eastern Kentucky Resources' commencement of action against Hardin and Arnett, and some knowledge of that action is required for an understanding of this case. Both actions were initiated in Magoffin Circuit Court, and both were subsequently transferred to Clark Circuit Court.

The named plaintiffs in the prior litigation are Patty Arnett and the individual members of The Magoffin Countians For A Better Environment, a citizens action group. They filed suit on October 25, 1991, against Charles Allen, who was at that time the Magoffin County Judge Executive; the individual members of the Magoffin Fiscal Court; and the Kentucky Natural Resources and Environmental Cabinet. Arnett and the other plaintiffs alleged that Allen signed and submitted to the Natural Resources and Environmental Cabinet a solid waste management plan which had not been submitted to the fiscal court for approval. The plaintiffs alleged that the plan was null and void because it was not authorized in accordance with state statutes, and that as a result of not having a proper waste management plan in place by a certain date, Magoffin County will be deprived of government funds and the ability to "control the construction, operation and level of waste importation into new or expanded facilities within the solid waste

management area." The complaint demanded that the defendants be restrained and permanently enjoined from acting on any permit based on the solid waste management plan submitted by the county judge-executive, that the plan be declared null and void, and that a writ of mandamus be issued to the fiscal court directing it to vote on a solid waste management plan and to submit the plan to the Cabinet. A writ of mandamus was issued on October 30, 1991, ordering the fiscal court to meet on November 11 and vote on a solid waste management plan.

Eastern Kentucky Resources, which planned to construct and maintain the solid waste facility, filed its complaint on October 30, 1991, against Arnett and Hardin seeking damages in excess of two million dollars. It alleged that Arnett and Hardin formed a citizens action group "for the sole purpose of interfering in an unlawful manner with the business relationship of [Eastern Kentucky Resources]," and that the "interference will deprive the Magoffin Fiscal Court of a sum of approximately $1,000,000 to $3,000,000 for the cost of closing its present landfill and the loss of royalties in excess of $9,000,000 in the first ten years of operation of the proposed landfill under the approved Magoffin County Solid Waste Plan." The complaint further alleged that the actions of Hardin and Arnett were "premeditated and designed to dissuade Magoffin County and the State of Kentucky from implementing the approved Solid Waste Management Plan which outrageous conduct has resulted in [Eastern Kentucky Resources] resulting (sic) significant damages in excess of $2,000,000." Hardin and Arnett filed an answer and counterclaim in which they alleged abuse of process and malicious prosecution, and, furthermore, that the sole purpose of the suit by Eastern Kentucky Resources was to prohibit them from exercising their First Amendment right to speak out against the proposed landfill. Hardin and Arnett later amended their counterclaim to assert the tort of outrageous conduct.

Hardin and Arnett filed a motion for summary judgment, asserting that their actions protesting the proposed landfill were absolutely privileged under the First Amendment to the United States Constitution and that Eastern Kentucky Resources has no standing to assert any damages on behalf of Magoffin County. Eastern Kentucky Resources, in response, maintained that it properly asserted a cause of action for tortious interference with contractual relations, and that Hardin's and Arnett's petition for writ of mandamus is not constitutionally protected because it is a sham petition. In its judgment, the circuit court held that the suit against the fiscal court was protected by the First Amendment, and the suit filed by Eastern Kentucky Resources was clearly a SLAPP, or strategic lawsuit against public participation, suit. The circuit court later amended the judgment to dismiss the counterclaim.

These appeals followed, in which the parties have invited this court to address whether Arnett's and Hardin's actions of filing the suit questioning the solid waste management plan signed by the county judge-executive without fiscal court ratification and seeking a petition for writ of mandamus against the fiscal court were privileged under the First Amendment. Eastern Kentucky Resources does not seem to protest Hardin's, Arnett's, and the circuit court's characterization of its suit as SLAPP litigation; rather, it argues that Arnett's complaint against the county judge-executive and others falls within the "sham exception" to the Noerr–Pennington doctrine. The Noerr–Pennington doctrine, developed by the United States Supreme Court in antitrust cases, provides that "activities within the normal scope of petitioning which represent attempts to secure anticompetitive governmental responses are exempt from antitrust liability." David L. Meyer, *A Standard for Tailoring Noerr–Pennington Immunity More Closely to the First Amendment Mandate*, 95 Yale L.J. 832, 834 (1986). Most recently, the Supreme Court defined the "sham exception" to the doctrine in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Other federal and state courts have applied the Noerr–Pennington doctrine to petitioning activities outside the antitrust field such as environmental activism, zoning questions, and so on. While this is an interesting area of the law, we need not delve into it because

we are of the opinion that Eastern Kentucky Resources' complaint, as a matter of law, did not state a claim for relief.

Eastern Kentucky Resources attempted to plead a cause of action for intentional interference with prospective business relations. The Kentucky Supreme Court, in *National Collegiate Athletic Ass'n v. Hornung*, Ky., 754 S.W.2d 855 (1988), adopted sections 766B, 767, and 773 of the *Restatement (Second) of Torts* and held that the intentional and improper interference with the prospective contractual relations of another will expose a person to liability. The Court in *Hornung* underscored the necessity of proving that the opposing party improperly interfered with prospective contractual relations, holding as follows:

> Our law is clear that a party may not recover under the theory presented in absence of proof that the opposing party "improperly" interfered with his prospective contractual relation. To determine whether the interference is improper, Section 767 sets forth seven factors to be considered by the court in ruling on the motion for directed verdict and, if the case is submitted, considered by the jury. Unless there is evidence of improper interference, after due consideration of the factors provided for determining such, the case should not be submitted to the jury. Even if evidence is presented which would otherwise make a submissible case, the party whose interference is alleged to have been improper may escape liability by showing that he acted in good faith to assert a legally protected interest of his own. While the party seeking recovery bears the burden of proving that the interference was improper, the party asserting a right to protect his own interest bears the burden of proving his defense.

*Hornung*, 754 S.W.2d at 858. The factors used to determine if an actor's conduct is improper, listed in *Restatement (Second) of Torts § 767* (1979), are as follows:

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,

> (d) the interest sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

The Court in *Hornung* further held that to prevail, a party seeking recovery must show malice or other wrongful conduct by the actor. "[S]ome element of ill will is seldom absent from intentional interference; and if the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability." *Hornung*, 754 S.W.2d at 859, *quoting* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1009–10 (5th ed. 1984). "[W]hat is meant is not malice in the sense of ill will but merely 'intentional interference without justification.'" *Restatement (Second) of Torts* § 766, comment s (1979).

Eastern Kentucky Resources alleged that Arnett and Hardin interfered with their prospective contractual relations by filing a complaint demanding that the county judge-executive submit a solid waste plan to the Natural Resources and Environmental Cabinet which the fiscal court had discussed and public comment was entertained. Clearly, they were justifiably acting pursuant to their legitimate interest as citizens that their county government adhere to mandated procedures. Under *Hornung*, then, Eastern Kentucky Resources cannot maintain a cause of action for intentional interference with prospective contractual relations. The circuit court did not err in dismissing its complaint.

In their appeal, Hardin and Arnett claim that the circuit court should have dismissed their counterclaim without prejudice. In their response to Eastern Kentucky Resources postjudgment motion, Hardin and Arnett stated that they had "no objection to the Judgement (sic) being amended to dismiss the Defendants' Counterclaim...." As Hardin and Arnett have invited the error of

which they now complain, we will not review the matter.

The circuit court judgment is affirmed.

HOWERTON, J., concurs.

JOHNSTONE, J., concurs in part and dissents in part by separate opinion.

JOHNSTONE, Judge, concurring in part and dissenting in part:

Respectfully, I must dissent from that portion of the majority opinion which holds that Eastern Kentucky Resources' complaint failed to state a claim for relief. I do not believe that the language of *Hornung*, nor the *Restatement*, supports this conclusion. It seems clear that the trial court failed to address the "sham exception" to the Noerr–Pennington doctrine leaving genuine issues of material fact that preclude entry of summary judgment.