GRAND COMMUNITIES, LTD., Fischer Development Company, Thomas Schreiber and Mary Ellen Schreiber, Appellants,

v.

Donald L. STEPNER, Appellee.

No. 2003–CA–002157–MR.

Court of Appeals of Kentucky.

Oct. 15, 2004.

Discretionary Review Denied by Supreme Court Sept. 14, 2005.

Joseph L. Trauth, Jr., Cincinnati, OH, for appellants.

Perry M. Bently, Todd S. Page, Lexington, KY, for appellee.

Before BUCKINGHAM and SCHRODER, Judges; MILLER, Senior Judge.[1]

## OPINION

BUCKINGHAM, Judge.

The appellants (Grand Communities, Ltd., Fischer Development Co., and Thomas and Mary Ellen Schreiber) appeal from an order of the Boone Circuit Court dismissing their complaint against Donald L. Stepner. Their complaint had alleged various causes of action in connection with Stepner's efforts to keep the appellants from rezoning and developing real property that was next to his property. In dismissing the complaint, the circuit court relied on the Noerr–Pennington doctrine. We conclude that the circuit court properly dismissed the appellants' complaint, and we thus affirm.

The appellants are residential real estate developers who purchased portions of

---

**1.** Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

unincorporated land in Boone County, Kentucky. The property consists of 367 acres. Stepner, an attorney, owns property next to the appellants' property.

The property had been zoned by Boone County as "rural urban estates." This zoning classification allowed one house per acre. The appellants sought to have the property rezoned to "suburban residential," a classification that would allow housing density of four houses per acre. Stepner was opposed to the rezoning, and he commenced a battle against it.

Initial efforts by the appellants to have the property rezoned began in 1998 before the Boone County Planning & Zoning Commission. Those efforts were met with public opposition, and the appellants withdrew their rezoning request. The appellants then proposed that the City of Florence annex the property so that it could be rezoned in the manner the appellants desired. However, with assistance from Stepner, the City of Union took quick action to annex the property into its city limits and thwarted annexation efforts by the City of Florence.

In separate lawsuits, the City of Florence and several owners of the property affected by the City of Union's annexation sued the City of Union, contending that its annexation of the appellants' property did not meet the requirements of KRS [2] Chapter 81A. The lawsuits were settled in April 1999, and the City of Union agreed to annul its annexation ordinances. The appellants' property was declared to be lawfully annexed by the City of Florence, and, on September 28, 1999, the City adopted an ordinance rezoning the property as "suburban residential." At that point the appellants began developing the property.

On October 26, 1999, several landowners of property next to the development (including Stepner) filed an appeal in the Boone Circuit Court pursuant to KRS 100.347(3) challenging the City of Florence's rezoning of the property. The circuit court dismissed the appeal on procedural grounds for failure of the appellants to name and join all owners of the development as parties. This court affirmed the dismissal, and the Kentucky Supreme Court declined to grant discretionary review.

This case began in March 2003 when the appellants filed a civil complaint in the Boone Circuit Court against Stepner. Their complaint alleged abuse of process, wrongful use of civil proceedings, intentional interference with contractual relations, and violation of 42 U.S.C. § 1983. First, the appellants alleged that Stepner and the City of Union interfered with the appellants' property rights and business interests by illegally annexing the property before the City of Florence could annex and rezone it. This allegation supported the claims of intentional interference with contractual relations and violation of 42 U.S.C. § 1983. Second, the appellants alleged that Stepner damaged their business interests by filing a "frivolous" challenge to the rezoning decision. This allegation supported the claims for abuse of process, wrongful use of civil proceedings, and intentional interference with contractual relations.

Stepner filed a motion to dismiss the complaint on the grounds that the appellants' claims were barred by the application of the Noerr–Pennington doctrine and the applicable statutes of limitation and also that each of the four claims failed to state a claim upon which relief may be granted. In an order entered on September 19, 2003, the circuit court dismissed the appellants' complaint, concluding that

2.  Kentucky Revised Statutes.

the Noerr–Pennington doctrine shielded Stepner from liability. The appellants then filed this appeal.

The Noerr–Pennington doctrine derived from two U.S. Supreme Court cases, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr* case involved a dispute between the trucking industry and the railroad industry and their respective interests in, and competition for, the long-distance transportation of heavy freight. The trial court determined that the Eastern Railroad Presidents Conference, an association of the presidents of 24 railroads, had violated the Sherman Antitrust Act in its publicity campaign directed at lawmaking and law enforcement authorities and against truckers as competitors. The Supreme Court held, however, that no violation of the Act could be "predicated upon mere attempts to influence the passage or enforcement of laws." 365 U.S. at 135, 81 S.Ct. 523. The Court explained that:

> The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so. It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors.

*Id.* at 139, 81 S.Ct. 523. The Court further explained that:

> It is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon the interests of the party against whom the campaign is directed. And it

seems equally inevitable that those conducting the campaign would be aware of, and possibly even pleased by, the prospect of such injury. To hold that the knowing infliction of such injury renders the campaign itself illegal would thus be tantamount to outlawing all such campaigns.

*Id.* at 143–44, 81 S.Ct. 523. Nevertheless, the Court acknowledged that there could be situations where the efforts toward influencing governmental action were merely a sham "to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor[.]" *Id.* at 144, 81 S.Ct. 523.

In the *Pennington* case four years later, the Supreme Court recognized its prior decision in the *Noerr* case and held that "Noerr shields from the Sherman Act a concerted effort to influence public officials regardless of intent of purpose." 381 U.S. at 670, 85 S.Ct. 1585. Thereafter, in *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the Supreme Court extended its views in the *Noerr* and *Pennington* cases to efforts by citizens or groups of citizens to influence administrative agencies and courts. 404 U.S. at 510, 92 S.Ct. 609. The Court stated that "the right to petition extends to all departments of the Government." *Id.*

In *Eastern Kentucky Resources v. Arnett*, Ky.App., 892 S.W.2d 617 (1995), a panel of this court noted that other federal and state courts have applied the Noerr–Pennington doctrine to petitioning activities such as zoning questions and other activities outside the antitrust field. *Id.* at 618. While the court stated that "this is an interesting area of the law," it declined to address it, concluding it was unnecessary to its opinion in that case. *Id.* Later, the Kentucky Supreme Court mentioned the Noerr–Pennington doctrine in

*Simpson v. Laytart,* Ky., 962 S.W.2d 392, 396 (1998). However, it declined to adopt the doctrine "at this time" in light of other conclusions reached in the case. *Id.* The parties have neither cited to, nor are we aware of any other Kentucky case mentioning the Noerr–Pennington doctrine.

■ The appellants have not argued, either to the circuit court or to this court, that the Noerr–Pennington doctrine should not be adopted by Kentucky courts. Based upon the reasons given by the U.S. Supreme Court in the *Noerr* case, we see no reason why Kentucky courts should not also adopt this doctrine. Rather than object to the adoption of the Noerr–Pennington doctrine by Kentucky courts, the appellants argued to the circuit court and to this court that the allegations in its complaint fell within the sham exception to the doctrine. This exception was mentioned by the Supreme Court in the *Noerr* case. *See Noerr,* 365 U.S. at 144, 81 S.Ct. 523.

The Supreme Court defined the sham exception in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). That case also involved a Sherman Act violation. In discussing the sham exception to the Noerr–Pennington doctrine, the Court stated that its decision in the *California Motor Transp. Co.* case "left unresolved the question presented by this case—whether litigation may be sham merely because a subjective expectation of success does not motivate the litigant." *Professional Real Estate Investors,* 508 U.S. at 57, 113 S.Ct. 1920. The Court answered the question in the negative and held that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* Quoting from the *Pennington* case, the Court stated, *"Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or

purpose." *Professional Real Estate Investors,* 508 U.S. at 58, 113 S.Ct. 1920 *quoting Pennington,* 381 U.S. at 670, 85 S.Ct. 1585.

The Supreme Court in the *Professional Real Estate Investors* case set out a two-part definition of sham litigation. The Court stated that the first part of the definition was that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60, 113 S.Ct. 1920. The Court noted that courts could examine a litigant's subjective motivation only if the litigation was objectively meritless. *Id.* The Court held that if the first part of the definition of sham litigation is met, then courts should focus on whether the litigation conceals "an attempt to interfere directly with the business relationships of a competitor" through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 60–61, 113 S.Ct. 1920 *quoting Noerr,* 365 U.S. at 144, 81 S.Ct. 523 and *Columbia v. Omni Outdoor Adver., Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). (Emphasis in original.)

In this case the Boone Circuit Court held that Stepner had an absolute right to appeal the rezoning by the City of Florence and that, therefore, his actions could not be "objectively baseless." Thus, the court determined that the sham exception to the Noerr–Pennington doctrine would not apply to these facts, and it dismissed the appellants' complaint. The appellants have appealed from that decision.

■ The appellants' first two counts of their complaint, abuse of process and wrongful use of civil proceedings, related solely to Stepner's actions in connection with the appeal from the rezoning decision by the City of Florence. The appeal was allowed pursuant to KRS 100.347(3) to "[a]ny person or entity claiming to be in-

jured or aggrieved[.]" As a neighboring or adjacent property owner, Stepner had standing to challenge the zoning change. *See 21st Century Dev. Co., LLC v. Watts,* Ky.App., 958 S.W.2d 25, 28 (1997). In connection with the appellants' claims of abuse of process and wrongful use of civil proceedings, we conclude that the circuit court properly determined that Stepner was shielded from liability by the Noerr–Pennington doctrine. Furthermore, given Stepner's standing to appeal the zoning decision, his appeal cannot be said to have been objectively baseless. Thus, his subjective motivation, whatever it may have been, is irrelevant, and the sham exception to the Noerr–Pennington doctrine does not apply. *See Professional Real Estate Investors,* 508 U.S. at 60, 113 S.Ct. 1920.

■ The third count of the appellants' complaint alleged intentional interference with contractual relations. The existence of this tort was recognized by the Kentucky Supreme Court in *National Collegiate Athletic Ass'n v. Hornung,* Ky., 754 S.W.2d 855, 857 (1988). This count of the complaint relates to both Stepner's actions in appealing the rezoning decision and in connection with the City of Union's unsuccessful attempt to annex the property. Because we have held that Stepner is shielded from liability by the Noerr–Pennington doctrine in connection with his appeal of the rezoning decision, we address only his actions concerning the City of Union's unsuccessful annexation.

■ A party may not recover for the tort of intentional interference with contractual relations "absent proof that the opposing party 'improperly' interfered with his prospective contractual relation." *Hornung,* 754 S.W.2d at 858. If there was an opposing party that interfered with the appellants in this regard, it was the City of Union, not Stepner. While Stepner may have been involved in advising, represent-

ing, or lobbying the City of Union in connection with its unsuccessful annexation of the property, any interference with contractual relations was by the City and not Stepner. Furthermore, any attempts by Stepner to persuade the City of Union to annex the property were protected by the Noerr–Pennington doctrine. *See Noerr,* 365 U.S. at 139, 81 S.Ct. 523. The circuit court correctly dismissed this allegation in the complaint as well.

■ The last count in the appellants' complaint alleged violation of 42 U.S.C. § 1983. The appellants contend that Stepner's actions in appealing the rezoning decision and his actions in counseling and advising the City of Union in its unsuccessful annexation of the property and in advising the City of Union in the two lawsuits filed against it by the City of Florence constituted a violation of their civil rights pursuant to 42 U.S.C. § 1983. Because we have held that Stepner is shielded from liability for his actions in connection with the appeal of the rezoning decision, we will address only the remaining allegations by the appellants.

■ "[S]ection 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)." *Collard v. Kentucky Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir.1990). Because Stepner's actions in connection with the unsuccessful annexation by the City of Union ended with a settlement in April 1999 of the two lawsuits against the City, the cause of action pursuant to 42 U.S.C. § 1983 was brought by the appellants more than one year after the expiration of the applicable statute of limitation. Therefore, this count in the appellants' complaint was also properly dismissed by the circuit court.

■ A court should not grant a motion to dismiss a complaint "unless it appears

the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union v. Kentucky Jockey Club,* Ky., 551 S.W.2d 801, 803 (1977). *See also James v. Wilson,* Ky.App., 95 S.W.3d 875, 883 (2002). In determining whether a complaint should be dismissed, the issue is a matter of law. *Id.* at 884. We conclude that the appellants would not be entitled to relief under any set of facts that could be proved to support their claims.

Therefore, the order of the Boone Circuit Court is affirmed.

ALL CONCUR.