RENDERED: AUGUST 21, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000208-MR

WILLOW GRANDE, LLC                                              APPELLANT


                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE A.C. MCKAY CHAUVIN, JUDGE
                          ACTION NO. 16-CI-005124


CHEROKEE TRIANGLE ASSOCIATION, INC.;
TIM HOLZ; RHONDA PETR; RUTH LERNER;
NICK MORRIS; ANNE LINDAUER;
DAVID DOWDELL; PEGGY ELGIN;
JOHN ELGIN; KEITH AUERBACH;
JOHN FENDIG; BILL SEILLER;
AND JOHN DOWNARD                                               APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

MAZE, JUDGE: Willow Grande, LLC (Willow Grande) appeals from an order of

the Jefferson Circuit Court dismissing its claims for abuse of process and

interference with a prospective contractual relationship against the Cherokee Triangle Association, Inc. (the CTA), individual members of the CTA, and the CTA's counsel, Bill Seiller (Seiller). The trial court concluded that the CTA, and other defendants were immune from liability arising from their pursuit of appeals challenging the re-zoning of Willow Grande's property. Willow Grande argues that there were factual issues whether those appeals were objectively baseless. Consequently, Willow Grande contends that the trial court could not find the defendants immune on a motion to dismiss.

We conclude that the trial court correctly applied the *Noerr-Pennington* doctrine to analyze the issue of immunity. Since the CTA and individual defendants were statutorily authorized to pursue the zoning appeals for the purpose of petitioning the courts for redress of grievances, they are entitled to constitutional immunity for any claims arising out of those appeals. Therefore, the trial court properly found that Willow Grande's claims were barred and dismissed the action. Hence, we affirm.

## I.     Facts and Procedural History

The current case is an outgrowth of an extended factual and procedural history. However, those underlying facts are not significantly in dispute. Willow Grande is the owner of .88 acres located at 1418 and 1426 Willow Avenue in the Cherokee Triangle area of Louisville, Kentucky. Beginning in

2008, Willow Grande and its developer began planning to replace the existing Bordeaux Apartment complex with a new condominium tower. One side of the street is predominantly single-family dwellings of fewer than four stories. The other side features a mix of structures, including three high-rise multi-family residential buildings—the eight-story Willow Terrace built in 1924, the eleven-story Dartmouth built in 1928, and the twenty-story 1400 Willow built around 1980.

In 2012, Willow Grande began the approval process by submitting a proposal. In the first phase of the project, Willow Grande applied for a certificate of appropriateness with the Cherokee Triangle Architectural Review Committee (CTARC). The certificate of appropriateness was a prerequisite to obtain a demolition permit for the existing structure and a construction permit for the new condominium tower. To set the approval process in motion, the developer provided CTARC mailing labels of all "abutting" landowners to whom written notice was sent by first class mail stating the date, time, and location of a public meeting at which the project would be discussed.

That meeting occurred January 25, 2012, beginning with a nearly hour-long presentation by the developer's attorney and the architect of the new Willow Grande Tower. When the meeting was opened for public comment, a statement from the CTA's President was read urging denial of the application for

-3-

various reasons. Seiller, an attorney and resident of the Dartmouth, also spoke against the project, although he stated that the CTA was not taking an official position at that time.

CTARC held a second public meeting a month later. But since the public record was closed at the end of the first meeting, no new testimony was heard. Subsequently, CTARC approved the application, but conditioned upon approvals of a zoning map amendment and a construction permit.

The CTA, now represented by Seiller, appealed to the Louisville Metro Landmarks Commission (the Commission). The CTA alleged that Willow Grande failed to provide proper notice to all abutting landowners as required by Metro ordinance. The CTA further argued that its members were not afforded an opportunity to present all relevant evidence against the project. And finally, the CTA asserted that the certificate was granted without substantial evidence. Following review, the Commission affirmed the certificate of appropriateness granted by CTARC, concluding that it was not based upon any clearly erroneous finding as to a material fact.

As permitted by Metro Ordinance § 32.263, the CTA appealed the Commission's decision to the Jefferson Circuit Court. *Cherokee Triangle Ass'n, Inc. v. Louisville Metro Landmarks Commission*, No. 12-CI-003990 (Jeff. Cir. Ct.). The complaint also listed Keith Auerbach and Chenault McClure Conway as

plaintiffs. Auerbach and Conway live across the street from the proposed development but were not parties to the appeal before the Commission. The trial court concluded that Auerbach and Conway were not proper parties because they failed to appeal CTARC's issuance of the certificate to the Commission. The trial court further found that the notice requirements had been substantially followed, all parties had received sufficient due process, and the Commission's issuance of the certificate was supported by substantial evidence. This Court affirmed the trial court's order on appeal. *Cherokee Triangle Ass'n, Inc. v. Willow Grande, LLC*, No. 2014-CA-000685-MR, 2017 WL 541082 (Ky. App. Feb. 10, 2017).

While these matters were pending, Willow Grande applied to the Louisville Metro Planning Commission (the Planning Commission) for a map amendment, in accord with the conditions imposed by CTARC. Willow Grande also applied for a number of variances and waivers from Louisville Metro's land-use regulations. The Planning Commission held a public hearing on the proposed zone change and on the associated applications for variances and waivers. The hearing lasted several hours, and multiple neighbors expressed opposition to the project. Following the hearing, the Planning Commission recommended denying the proposed map amendment without deciding whether the variances and waivers were appropriate.

The recommendation prompted Willow Grande to petition the Metro Council for approval. Following a hearing, the Metro Council voted to adopt factual findings approving the map amendment. The Council remanded the matter to the Planning Commission to address Willow Grande's applications for the variances and waivers.

On remand, the Planning Commission recommended approving five variances and seven waivers. Willow Grande also revised its proposed site plan to reduce the building's height by two stories. The Metro Council later adopted this recommendation and approved a final plan.

In the first action, filed on September 6, 2013, the CTA, joined by Auerbach, John Downard, and Rhonda Petr, appealed the Metro Council's approval of the zoning map amendment. *Cherokee Triangle Ass'n, Inc. v. Willow Grande, LLC*, No. 13-CI-004484 (Jeff. Cir. Ct.). In the second action, filed on April 16, 2015, the CTA, joined by Auerbach and Petr, appealed from the Planning Commission's order granting the variances and waivers. *Cherokee Triangle Ass'n, Inc. v. Willow Grande, LLC*, No. 15-CI-001809 (Jeff. Cir. Ct.).[1] After filing of the

---

[1] In its brief, Willow Grande states that the CTA filed four lawsuits challenging the re-zoning and administrative approvals of the project. Willow Grande appears to be referring to an "Amended and Supplemental Complaint" filed by the CTA on June 23, 2015, in Action No. 13-CI-004484. The amended complaint reflected the Metro Council's adoption of the final development plan. The trial court determined that the claims raised in the amended complaint were repetitive of those brought in Action No. 15-CI-001809 and consolidated the matters brought in those two complaints. The amended complaint did not constitute a separate lawsuit, only the attempted amendment of an existing one.

second action, the matters were consolidated before a single division of the Jefferson Circuit Court.

In its first order, entered November 20, 2015 (as modified by a later order entered August 26, 2016), the trial court upheld the Metro Council's adoption of an ordinance granting the zoning map amendment. The court found no evidence that the Metro Council acted arbitrarily or in excess of its authority. In its second order, entered on August 26, 2016, the trial court likewise upheld the Planning Commission's grant of the variances and waivers to Willow Grande.[2] This Court affirmed those judgments on appeal. *Cherokee Triangle Ass'n, Inc. v. Louisville Metro Planning & Zoning Comm'n*, No. 2016-CA-001512-MR, 2017 WL 5953521 (Ky. App. Dec. 1, 2017). Thereafter, the Kentucky Supreme Court denied CTA's motion for discretionary review.

Willow Grande filed its first complaint in this action on October 14, 2016, against the CTA and eleven individual association members, asserting claims for abuse of process, wrongful use of civil proceedings, and interference with a prospective economic advantage. By amended complaint filed on February 12, 2018, Willow Grande joined Seiller, who had been the CTA's lead counsel,

---

[2] Although the matters were consolidated, the first order was heard and issued by Division Six of the Jefferson Circuit Court. Thereafter, the matter was reassigned to Division Eleven by Order of Reciprocal Reallotment. The order correcting the November 20, 2015 order in Action No. 13-CI-004484 and the order granting summary judgment in Action No. 15-CI-001809 were entered by the presiding judge in Division Eleven.

and John Elgin as defendants.  After all parties were before the court, the CTA and individual defendants filed a motion to dismiss, arguing that KRS[3] 100.347 afforded them an unfettered right to appeal zoning decisions.  Consequently, they asserted that their statutory appeals could not be considered as "sham" litigation under the *Noerr-Pennington* doctrine.  The trial court agreed, concluding that the defendants were shielded from liability from Willow Grande's claims relating to their actions in appealing the zoning decisions.  By amended order entered on January 8, 2019, the trial court entered a corrected order dismissing the claims relating to Seiller.  Willow Grande now appeals from these orders.  Additional facts will be set forth below as necessary.

## II.   Standard of Review

CR[4] 12.02 sets out defenses which may be asserted without filing a responsive pleading, including, "(f) failure to state a claim upon which relief can be granted[.]"  A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint."  *Upchurch v. Clinton County*, 330 S.W.2d 428, 429-30 (Ky. 1959).  A trial court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . ."  *Pari-Mutuel Clerks'*

---

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Civil Procedure.

-8-

*Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551
S.W.2d 801, 803 (Ky. 1977).  Whether a court should dismiss an action pursuant to
CR 12.02 is a question of law.  *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App.
2002). Consequently, we conduct a *de novo* review of the trial court's order
dismissing the action.  *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d
599, 601 (Ky. 2011), *overruled on other grounds by Maggard v. Kinney*, 576
S.W.3d 559 (Ky. 2019).

### III.    Application of the *Noerr-Pennington* Doctrine

The parties agree the viability of Willow Grande's claims turns on the
application of the *Noerr-Pennington* doctrine, which stems from two United States
Supreme Court cases, *Eastern Railroad Presidents Conference v. Noerr Motor
Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) and *United Mine
Workers of America v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626
(1965).  The *Noerr* case involved a dispute between the trucking industry and the
railroad industry and their respective interests in, and competition for, the long-
distance transportation of heavy freight.  The trial court determined that the Eastern
Railroad Presidents Conference, an association of the presidents of 24 railroads,
had violated the Sherman Anti-Trust Act in its publicity campaign directed at
lawmaking and law enforcement authorities, and against truckers as competitors.
The Supreme Court held, however, that no violation of the Act could be

"predicated upon mere attempts to influence the passage or enforcement of laws."

365 U.S. at 135, 81 S. Ct. at 528. The Court explained that:

> The right of the people to inform their representatives in
> government of their desires with respect to the passage or
> enforcement of laws cannot properly be made to depend
> upon their intent in doing so. It is neither unusual nor
> illegal for people to seek action on laws in the hope that
> they may bring about an advantage to themselves and a
> disadvantage to their competitors.

*Id.*, 365 U.S. at 139, 81 S. Ct. at 530.

> The Court further explained that:

> It is inevitable, whenever an attempt is made to influence
> legislation by a campaign of publicity, that an incidental
> effect of that campaign may be the infliction of some
> direct injury upon the interests of the party against whom
> the campaign is directed. And it seems equally inevitable
> that those conducting the campaign would be aware of,
> and possibly even pleased by, the prospect of such injury.
> To hold that the knowing infliction of such injury renders
> the campaign itself illegal would thus be tantamount to
> outlawing all such campaigns.

*Id.*, 365 U.S. at 143-44, 81 S. Ct. at 533.

Nevertheless, the Court acknowledged that there could be situations where the efforts toward influencing governmental action were merely a sham "to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor[.]" *Id.*, 365 U.S. at 144, 81 S. Ct. at 533.

In the *Pennington* case four years later, the Supreme Court recognized its prior decision in the *Noerr* case and held that "Noerr shields from the Sherman

-10-

Act a concerted effort to influence public officials regardless of intent or purpose." 381 U.S. at 670, 85 S. Ct. at 1593.

Thereafter, in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), the Supreme Court extended its views in the *Noerr* and *Pennington* cases to efforts by citizens or groups of citizens to influence administrative agencies and courts. 404 U.S. at 510-11, 92 S. Ct. at 611-12. The Court stated that "the right to petition extends to all departments of the Government." *Id.*, 404 U.S. at 510, 92 S. Ct at 612. But the Court also reiterated that the *Noerr-Pennington* doctrine does not provide absolute immunity where the challenged action is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor[.]" *Id.*, 404 U.S. at 511, 92 S. Ct at 612 (quoting *Noerr*, 365 U.S. at 144, 81 S. Ct. at 533).

The *Noerr-Pennington* doctrine is grounded in the First Amendment rights of association and petition. *Id.*, 404 U.S. at 510-11, 92 S. Ct. at 611-12. However, Kentucky courts were hesitant to apply the doctrine to state law claims such as abuse of process and intentional interference with contractual relations. In *Eastern Kentucky Resources v. Arnett*, 892 S.W.2d 617 (Ky. App. 1995), a panel of this Court noted that other federal and state courts have applied the *Noerr-Pennington* doctrine to petitioning activities such as zoning questions and other

-11-

activities outside the antitrust field. *Id.* at 618. But the Court declined to formally adopt the doctrine. Similarly, the Kentucky Supreme Court mentioned the *Noerr–Pennington* doctrine in *Simpson v. Laytart*, 962 S.W.2d 392 (Ky. 1998), but also declined to formally adopt the doctrine in that case, as other issues were dispositive of the matter. *Id.* at 396.

Eventually, this Court addressed the application of the *Noerr-Pennington* doctrine in *Grand Communities, Ltd. v. Stepner*, 170 S.W.3d 411 (Ky. App. 2004), as it affected state law claims for abuse of process and intentional interference with a contractual relation. In *Stepner*, as in the current case, a group of developers attempted to bring these claims against an adjoining property owner who had unsuccessfully challenged their re-zoning action. The circuit court dismissed the developers' complaint, concluding that the *Noerr-Pennington* doctrine shielded Stepner from liability. *Id.* at 413-14. On appeal, this Court agreed, and then went on to address the sham litigation exception to the doctrine.

> The Supreme Court in [*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)] set out a two-part definition of sham litigation. The Court stated that the first part of the definition was that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60, 113 S. Ct. 1920. The Court noted that courts could examine a litigant's subjective motivation only if the litigation was objectively meritless. *Id.* The Court held that if the first part of the definition of sham litigation is met, then courts should

-12-

> focus on whether the litigation conceals "an attempt to interfere directly with the business relationships of a competitor" through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 60-61, 113 S. Ct. 1920 *quoting Noerr*, 365 U.S. at 144, 81 S. Ct. 523 and *Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991). (Emphasis in original.)

*Id.* at 415.

In the current case, Willow Grande urges that the sham exception is applicable because the zoning challenges brought by the CTA were objectively baseless. Willow Grande first points to language in this Court's prior opinions characterizing certain arguments made by the CTA as "without merit." We do not find this characterization to be controlling for purposes of determining whether the underlying litigation was objectively baseless. The prior panels made those comments in the context of the standard of review of appeals from zoning actions under KRS 100.347. *See Am. Beauty Homes Corp. v. Louisville & Jefferson Cty. Planning & Zoning Comm'n*, 379 S.W.2d 450 (Ky. 1964). We also note that the discretionary nature of re-zoning determinations creates an additional limit on the scope of judicial review in those actions. *See Hilltop Basic Res., Inc. v. Cty. of Boone*, 180 S.W.3d 464, 468 (Ky. 2005). As a result, while the CTA's arguments were unavailing in the prior appeals, we cannot construe the language in those opinions as determinative of the outcome in this case.

The Court in *Stepner* noted that the underlying appeal by the property owner was brought pursuant to KRS 100.347(3), which permits an appeal of a zoning decision by "[a]ny person or entity claiming to be injured or aggrieved[.]" *Stepner*, 170 S.W.3d at 415-16. The Court also noted that the statute grants a neighboring or adjacent property owner broad standing to challenge the zoning change. *Id.* at 416. *See also Warren Cty. Citizens for Managed Growth, Inc. v. Bd. of Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 12 (Ky. App. 2006). In light of this statutory right to bring the zoning challenge, the Court in *Stepner* indicated that the zoning appeal could not have been objectively baseless, regardless of the plaintiff's subjective motivation. *Stepner*, 170 S.W.3d at 416.

Willow Grande argues that the CTA's statutory authorization and standing to bring the zoning appeals cannot serve as the sole basis to determine whether the appeals were objectively baseless. Willow Grande points to *Bourbon County Joint Planning Comm'n v. Simpson*, 799 S.W.2d 42 (Ky. App. 1990), in which a panel of this Court held that a zoning applicant could pursue claims for abuse of process and interference with a prospective contractual relationship arising from adjoining property owners' appeal of a re-zoning determination. *Id.* at 45-46. The Court held that there were genuine issues of material fact whether the zoning appellants had acted in good faith when challenging the zoning action. *Id.* at 46.

The decision in *Simpson* predates *Stepner*'s adoption of the *Noerr-Pennington* doctrine.[5] Since the First Amendment protects the right of citizens to petition for redress of grievances, the doctrine generally provides immunity from legal action to persons who bring a zoning appeal to induce the passage or enforcement of law or to solicit governmental action. Nevertheless, Willow Grande asserts that the CTA's action was so objectively baseless that it should not be entitled to the absolute immunity afforded by the *Noerr-Pennington* doctrine.

But under the objective prong of the sham exception, sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief. *Professional Real Estate Investors*, 508 U.S. at 62, 113 S. Ct. at 1929. If the court finds the litigation to be baseless, the court must then focus on whether the baseless lawsuit conceals an attempt to use the governmental process, as opposed to the outcome of that process, to cause injury to the plaintiff. *Id.*, 508 U.S. at 60-61, 113 S. Ct. at 1928. Essentially, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form. *Video International Production, Inc.*

---

[5] We also note that *Noerr-Pennington* immunity is generally regarded as an affirmative defense which must be timely raised or is deemed to have been waived. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). There is no indication that the issue was ever raised in *Simpson*.

*v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).

For purposes of the motion to dismiss, we must accept Willow Grande's assertion that the CTA sought to use the appeal process to delay the project and to obtain concessions on the size of the condominium development. But as noted in *Stepner*, if a party is genuinely aggrieved by the outcome of a zoning action, KRS 100.347 affords that party both the right and standing to challenge that action. Willow Grande does not allege that the parties to the zoning appeals lacked standing under KRS 100.347 or failed to comply with the procedural requirements to bring such an action. We agree that there were defects in each of these appeals which rendered success on the merits unlikely, most notably lack of preservation and the improper naming of parties. But on their face, each of these actions was brought for the express purpose of challenging the zoning decisions as they affected the substantial interests of the neighboring and adjoining property owners.

We may also consider a pattern of repetitive litigation to determine whether the zoning appeals were objectively baseless.[6] *See California Motor*

---

[6] With respect to the claims against Seiller, Willow Grande points to another appeal in which Seiller represented neighboring property owners who were challenging re-zoning actions by the Planning Commission and the Metro Council. The circuit court rejected similar arguments to those presented in the appeals at issue in this case, and this Court affirmed that judgment on appeal. *Mauney v. Louisville Metro Council*, No. 2014-CA-000263-MR, 2016 WL 4255017 (Ky. App. Aug. 12, 2016). We find no basis to consider conduct occurring in a different appeal,

-16-

*Transp*, 404 U.S. at 513, 92 S. Ct at 613. Similarly, a pattern of asserting unsupported legal or factual arguments may demonstrate that the zoning appeals were objectively baseless. *See Pound Hill Corp., Inc. v. Perl*, 668 A.2d 1260, 1264 (R.I. 1996). But in this case, the CTA brought separate appeals from specific actions as they became appealable: the CTARC issuance of the certificate of appropriateness; the Metro Council's approval of the re-zoning; and the Planning Commission's approval of the variances and waivers. The appeals were brought as soon as the underlying matters became ripe for adjudication, and not merely for purposes of delay or vexation.

Furthermore, Willow Grande does not assert that the CTA abused the process, rather than the outcome of that process, as a means to procure a result other than favorable governmental action. Along similar lines, a claim for abuse of process is based on "the employment of legal process for some other purpose other than that which it was intended by the law to effect." *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981), *abrogated on other grounds by Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016). Willow Grande does not allege that the CTA had an anti-competitive purpose in bringing the zoning appeals, or any purpose other than to challenge the appropriateness of the proposed development to the Cherokee

---

involving different parties, a different parcel of property, and a different developer, as evidence of a repetitive pattern of conduct in this case.

-17-

Triangle area. The mere fact that the appeals were ultimately unsuccessful is not sufficient to bring them within the scope of the sham exception.[7]

Consequently, we must conclude that Willow Grande's complaint failed to state facts sufficient to fall within the sham exception to the *Noerr-Pennington* doctrine. The CTA's efforts to delay the project in order to influence governmental approval of the size and scope of the development cannot be considered to be objectively baseless as a matter of law.[8] Thus, the trial court properly found that the CTA and the individual defendants were immune from

[7] Willow Grande refers to the recently rendered decision by another panel of this Court in *Bardstown Capital Corp. v. Seiller Waterman, LLC*, No. 2018-CA-001886-MR, 2020 WL 3108238 (Ky. App. Jun. 12, 2020). In that case, the Court concluded that the sham exception to the *Noerr-Pennington* doctrine applied to preclude summary judgment. The Court found sufficient evidence to create genuine issues of material fact concerning both the "objectively baseless" and the "subjective motivation" prongs of the test. As an initial matter, we note that the *Bardstown Capital* opinion is not final as of this writing. Opinions that are not final shall not be cited as authority in any other case. CR 76.30(2); Rules of the Supreme Court (SCR) 1.030(8)(a). *See also Kohler v. Com., Transp. Cabinet*, 944 S.W.2d 146, 147 (Ky. App. 1997). Second, the facts of *Bardstown Capital* are distinguishable from those in the current case. While the CTA was unsuccessful in its appeals from the zoning and administrative decisions, we have concluded that it had valid standing and interest to bring the appeals. And unlike in *Bardstown Capital*, there is no claim that the CTA or its individual members brought those appeals with an anti-competitive motive or to extract a personal pecuniary gain outside of the scope of a zoning appeal. Thus, we conclude that the result in *Bardstown Capital* would not control the outcome of this appeal.

[8] In 2017, the General Assembly enacted KRS 100.3471, which requires a party appealing a circuit court decision to post a bond which "shall consider the costs that the appellee may incur during the pendency of the appeal." KRS 100.3471(3)(d). The statute further sets out criteria under which the circuit court may find the appeal to be "presumptively frivolous," KRS 100.3471(3)(c), in which case the bond may also account for economic losses and damages which the appellee may incur during the pendency of the appeal. 2017 Ky. Laws ch. 181, §1 (eff. Apr. 11, 2017). These provisions were not in effect at the time the CTA filed its appeals in the underlying actions and are not relevant to the issues presented in this case. Furthermore, we express no opinion whether this section is affected by the application of the *Noerr-Pennington* doctrine or any other constitutional rule.

claims of abuse of process and interference with a prospective contractual relationship arising from their zoning appeals. Therefore, the trial court property granted their motion to dismiss the complaint.

## IV. Conclusion

The *Noerr-Pennington* doctrine protects persons who associate and petition the government for redress of grievances. Since these interests implicate significant constitutional rights, a party seeking to assert claims arising from such conduct bears a high burden of showing that the causes of action will not have an impermissibly chilling effect on the exercise of those rights. The CTA and the adjoining property owners had a right to assert objections to the Willow Grande development as it affected their substantial interests. They also had a right to bring appeals from adverse zoning determinations to ensure that those decisions complied with applicable law. Finally, the CTA and adjoining property owners had a right to employ Seiller to pursue these legal matters.

Although the CTA and adjoining property owners were unsuccessful in their appeals, Willow Grande now bears the burden to establish that those actions were "objectively baseless." From the face of the pleadings and the opinions rendered by this Court and the trial court in the prior actions, we find no basis to conclude that the CTA brought those appeals for any reason other than to obtain a favorable outcome with respect to their interests in the proceedings. As a

result, those appeals cannot be considered to have been sham litigation under the *Noerr-Pennington* doctrine. For this reason, the CTA, the adjoining property owners, and Seiller are immune from liability from Willow Grande's claims of abuse of process and interference with a prospective contractual relationship.

Accordingly, we affirm the order of the Jefferson Circuit Court dismissing Willow Grande's complaint.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald L. Cox
Joseph P. Hummel
Matthew P. Cox
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Donald L. Cox
Louisville, Kentucky

BRIEF FOR APPELLEES
CHEROKEE TRIANGLE
ASSOCIATION, INC.; TIM HOLZ;
RHONDA PETR; RUTH LERNER;
NICK MORRIS; ANNE LINDAUER;
DAVID DOWDELL; PEGGY
ELGIN; JOHN ELGIN; KEITH
AUERBACH; AND JOHN
DOWNARD:

Donald L. Miller
Megan L. Adkins
Buddy J. VanCleave
Louisville, Kentucky

BRIEF FOR APPELLEE BILL
SEILLER:

Theodore W. Walton
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES CHEROKEE
TRIANGLE ASSOCIATION, INC.;
TIM HOLZ; RHONDA PETR; RUTH
LERNER; NICK MORRIS; ANNE
LINDAUER; DAVID DOWDELL;
PEGGY ELGIN; JOHN ELGIN;
KEITH AUERBACH; AND JOHN
DOWNARD:

Donald L. Miller
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE BILL SEILLER:

Theodore W. Walton
Louisville, Kentucky