RENDERED: MARCH 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0312-DG

SEILLER WATERMAN, LLC; BILL V.                      APPELLANTS
SEILLER; TERRY MAUNEY; PHILLIP
STEWART; BETTIE STEWART; ELZIE
WATSON; AND BRIDGETTE WATSON


                      ON REVIEW FROM COURT OF APPEALS
V.                            NO. 2018-CA-1886
               JEFFERSON CIRCUIT COURT NO. 16-CI-005521


BARDSTOWN CAPITAL                          APPELLEES
CORPORATION AND FRANK CSAPO


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>REVERSING AND REMANDING</u>**

Bardstown Capital Corporation sought to develop Jefferson County residential property into a commercial center, including a mixture of retail, restaurant and office uses. Neighboring homeowners opposed the development, expressing concerns with respect to noise, drainage, and increased automobile traffic. The proposed development was ultimately approved, and the homeowners initiated an appeal of the rezoning ordinance in Jefferson Circuit Court pursuant to Kentucky Revised Statute (KRS) 100.347(3), contesting it on several grounds including the adequacy of notice of the various zoning hearings. After the neighboring homeowners' unsuccessful

zoning appeal, Bardstown Capital filed a complaint against them and their attorneys for wrongful use of civil proceedings and abuse of process.

In granting the homeowners' motion for summary judgment, the Jefferson Circuit Court determined that the homeowners were entitled to immunity under the *Noerr-Pennington* doctrine,[1] which protects an individual's right to petition the government for grievances. The Court of Appeals agreed the *Noerr-Pennington* doctrine applied but applied the "sham" exception to that doctrine to reverse the trial court, holding that a fact-finder must determine the legitimacy of the homeowners' underlying appeal. On discretionary review, we reverse the Court of Appeals' holding that summary judgment was improper and remand to the trial court for reinstatement of summary judgment in favor of the homeowners and their attorneys.

## FACTS AND PROCEDURAL HISTORY

In 2008 Bardstown Capital Corporation began planning for the development of approximately 43.5 acres of property in southeast Louisville at the intersection of Bardstown Road and Interstate 265. When complete, the proposed development would become an entertainment and shopping center, including a movie theater and retail and restaurant spaces. In August 2009 Bardstown Capital filed an application with Louisville Metro Planning and Design Services requesting a change in zoning of the property from residential

---

[1] The *Noerr-Pennington* doctrine is derived from two United States Supreme Court cases: *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965).

to commercial and the approval of its general development plan. Several homeowners on Wingfield Road, which directly adjoins the proposed development site, opposed the zoning change. The homeowners expressed concerns about the impact of such a development, particularly with respect to noise, drainage, and increased automobile traffic, given the close proximity of the development to their homes. Louisville Metro Planning and Design Services scheduled a public hearing on February 4, 2010.[2] Statutorily-required notice was mailed to the adjoining homeowners and posted on and around the property. A notification of the February 4 hearing was also published in *The Courier-Journal.*

On February 4, no witnesses were called, no exhibits were presented, and no arguments on either side of the proposed zoning change were advanced. In short, no hearing was held. Instead, the Louisville Metro Planning Commission (Commission) announced that the public hearing was continued to March 4, 2010, but no additional notice of the rescheduled hearing was provided. At the March 4 hearing, three hours of public testimony and evidence was received. At that time, the Commission announced a continuance to March 18. After several additional continuances, five and one-half hours of evidence and testimony was eventually heard on May 20, 2010.

---

[2] Bardstown Capital asserts that the Land Development and Transportation Committee, a subcommittee of the Commission, first held public review of the development plans on December 10, 2009 and held other meetings on January 14 and 28, 2010. Bardstown Capital asserts that some of the neighboring homeowners attended these meetings and voiced their concerns and opposition to the development.

On that date the Commission unanimously recommended approval of the zoning change and development plan. The Commission forwarded its extensive written recommendation to the Louisville Metro Council which then passed an ordinance approving the zoning change.

On August 26, 2010, the neighboring homeowners, represented by Seiller Waterman, filed a complaint in Jefferson Circuit Court pursuant to KRS 100.347 contesting the Commission's recommendation to approve the zoning change. The homeowners alleged, among other things, a lack of adequate notice in violation of their due process rights. The appeal sought no damages— it only requested notice and an opportunity to be heard.

A lengthy period of discovery and motion practice ensued and approximately three years later, the homeowners and Bardstown Capital each filed motions for summary judgment. After hearing oral arguments, the trial court granted summary judgment in favor of Bardstown Capital, holding that KRS Chapter 100 provides no support for the homeowners' position that they were entitled to additional written notices of continued hearing dates. The trial court identified the many ways in which there had been notice of the February 4, 2010 hearing but did not explicitly address the fact that no hearing actually occurred on February 4.[3] The Court of Appeals affirmed the trial court. *Mauney v. Louisville Metro Council*, 2014-CA-000263-MR, 2016 WL 4255017,

---

[3] The record of the Jefferson Circuit Court action, 10-CI-06022, the action in which the homeowners originally filed an appeal from the zoning decision, is not before us in this case.

4

*1 (Ky. App. Aug. 12, 2016).  The appellate court found sufficient proof in the record to conclude that adequate notice of the February 4 hearing was provided.  The homeowners did not seek discretionary review by this Court.

On November 4, 2016, three months after the Court of Appeals' decision, Bardstown Capital filed a complaint against the neighboring homeowners and Seiller Waterman claiming that the 2010 action constituted a wrongful use of civil proceedings.[4]  The complaint alleged that Bardstown Capital offered to purchase the homeowners' properties for fair market value, which they rejected.  Bardstown Capital claimed that the homeowners' attorney, Bill Seiller, approached counsel for Bardstown Capital and stated their intent to appeal the rezoning approval in order to induce Bardstown Capital to buy the homeowners' properties for a higher price.  In addition, Bardstown Capital claimed substantial damages because of undue delay, including lost profits in excess of $12 million and approximately $74,000 in legal fees.  In an amended complaint filed in February 2017, Bardstown Capital added allegations of abuse of process and malicious prosecution.[5]

On August 31, 2017 the trial court dismissed Bardstown Capital's claim for abuse of process based on the statute of limitations because Bardstown

---

[4] Bardstown Capital's complaint named Seiller Waterman, LLC, attorney Bill V. Seiller, and neighboring homeowners—Terry and Carolyn Mauney, Phillip and Bettie Stewart, and Elzie and Bridgette Watson.  On April 21, 2017, Carolyn Mauney passed away and was not named as a party in the appeal to the Court of Appeals.

[5] A malicious prosecution claim derives from the wrongful prosecution of criminal cases.  In a civil context, the claim is more accurately characterized as a wrongful use of civil proceedings.  *Prewitt v. Sexton,* 777 S.W.2d 891, 894 (Ky. 1989).

5

Capital did not file the claim within one year of the cause of action accruing. In July 2018, Seiller Waterman and the homeowners amended their answer to assert that Bardstown Capital's complaint was barred by the *Noerr-Pennington* doctrine, the First Amendment to the United States Constitution and Section 1 of the Kentucky Constitution.[6]

Based on the defenses asserted in the answer, Seiller Waterman and the homeowners moved for summary judgment on the sole remaining claim, wrongful use of civil proceedings, on August 21, 2018. In response, Bardstown Capital argued that the *Noerr-Pennington* doctrine is inapplicable because zoning rights are statutory, not constitutional. Bardstown Capital asserted that the homeowners initiated the zoning appeal to obtain a price above fair market value for their properties.

On November 28, 2018, the trial court granted summary judgment in favor of Seiller Waterman and the homeowners. The trial court determined that the *Noerr-Pennington* doctrine applies and the fact that the bulk of the evidentiary hearing was held without fresh notice conferred a reasonable basis for appeal. Applying *Grand Communities, Ltd. v. Stepner,* 170 S.W.3d 411 (Ky. App. 2004), a zoning case in which the Court of Appeals applied the *Noerr-Pennington* doctrine, the trial court reasoned that the homeowners' motive in

---

[6] The First Amendment of the United States Constitution protects "the right of the people . . . to petition the Government for a redress of grievances" and applies to state and local governments through the Fourteenth Amendment.

Section 1 of the Kentucky Constitution provides in relevant part "the right . . . of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

filing the appeal was irrelevant. On appeal to the Court of Appeals, Bardstown Capital again argued that the *Noerr-Pennington* doctrine is inapplicable and that the trial court erred in dismissing its abuse of process claim.

The Court of Appeals affirmed the dismissal of the abuse of process claim and reversed the summary judgment.[7] The Court of Appeals agreed with the *Stepner* court's adoption of the *Noerr-Pennington* doctrine in zoning actions but held that the application of the doctrine's "sham" exception should be determined by a fact-finder. An action is a sham under the *Noerr-Pennington* doctrine if it is objectively baseless and the subjective intent of the petitioning party was to inhibit competition, not to seek redress from the government. *Pro. Real Est. Inv., Inc. v. Columbia Pictures Indus., Inc.* (*PRE)*, 508 U.S. 49, 55 (1993).

Having granted discretionary review, heard oral arguments, and carefully considered the record, we reverse the Court of Appeals' decision and remand to the trial court for reinstatement of the summary judgment.

---

[7] The Court of Appeals upheld the trial court's dismissal of Bardstown Capital's abuse of process claim, holding that it was filed outside the one-year statute of limitations period. The appellate court relied on *DeMoisey v. Ostermiller,* 2014-CA-001827-MR, 2016 WL 2609321, *1 (Ky. App. May 6, 2016), an opinion depublished by this Court in its denial of discretionary review on December 8, 2016. The Court of Appeals held that "the cause of action for an abuse of process claim accrues at the time the conduct complained of by the plaintiff occurred, not at the termination of the underlying litigation." *Id.* at *14. Therefore, the court determined that the cause of action accrued on October 22, 2014 when Seiller Waterman filed a motion for extension of time to file supplemental briefs, the last action Seiller Waterman took in the zoning appeal. Consequently, Bardstown Capital's abuse of process claim included in its amended complaint in February 2017 was filed outside the statute of limitations. The parties do not raise any issues regarding the abuse of process claim in this appeal.

**ANALYSIS**

The primary issue before us is the applicability of the *Noerr-Pennington* doctrine in zoning litigation. On appeal, we review a summary judgment *de novo. Shelton v. Ky. Easter Seals Soc'y, Inc.,* 413 S.W.3d 901, 905 (Ky. 2013). We must consider whether the trial court "correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Fluke Corp. v. LeMaster,* 306 S.W.3d 55, 59 (Ky. 2010) (citation omitted). To defeat summary judgment, Bardstown Capital must have presented affirmative evidence that a genuine issue of material fact exists. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991).

Seiller Waterman and the homeowners argue that the *Noerr-Pennington* doctrine applies, and bars Bardstown Capital's wrongful use of civil proceedings claim. In response, Bardstown Capital asserts that the *Noerr-Pennington* doctrine does not apply to zoning cases and if it does, the applicability of the sham exception must be determined by a fact-finder, as the Court of Appeals held. We begin our analysis by examining the history and application of the *Noerr-Pennington* doctrine.

## I. The *Noerr-Pennington* Doctrine

The Sherman Act, enacted in 1890, was the first federal antitrust law aimed at preserving competition as a rule of trade by prohibiting activities that restrict interstate commerce. 15 U.S.C. §§ 1-38. The Sherman Act serves as a century-old cornerstone in the antitrust arena that influenced the creation of

other laws and judicial decisions to regulate trade and commerce.  The right to petition is one of "the most precious of the liberties safeguarded by the Bill of Rights," *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524-25 (2002) (citation omitted), and the intersection of antitrust laws and First Amendment rights has generated litigation and implicated numerous policy considerations. Importantly, the various immunities from antitrust coverage include the petitioning immunity created by the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine is derived from two United States Supreme Court cases: *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965).  In *Noerr,* twenty-four railroad associations started a publicity campaign against truckers in an attempt to foster the adoption and retention of laws destructive to the trucking business.  365 U.S. at 129.  As a result, the Governor of Pennsylvania vetoed the Fair Truck Bill, which would have allowed trucks to increase the weight of their loads.  *Id.* at 130.  Several trucking companies filed suit, claiming that the railroads conspired to restrain trade in, and monopolize, the long-distance freight industry in violation of Sections 1 and 2 of the Sherman Act.  *Id.* at 130-31.  The United States Supreme Court held that there could be no violation of the Sherman Act based on attempts to influence the passage or enforcement of certain laws.  *Id.* at 135.

> The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so.  It is neither unusual nor illegal for people to

9

seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors.

*Id.* at 139. The Court also explained that:

It is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon the interests of the party against whom the campaign is directed. And it seems equally inevitable that those conducting the campaign would be aware of, and possibly even pleased by, the prospect of such injury. To hold that the knowing infliction of such injury renders the campaign itself illegal would thus be tantamount to outlawing all such campaigns.

*Id.* at 143-44. However, the Court acknowledged the possibility of situations where efforts toward influencing governmental action were merely a sham "to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor . . . ." *Id.* at 144.

Four years later, in *Pennington,* 381 U.S. 657, the United States Supreme Court reaffirmed its decision in *Noerr* and held that efforts to influence public officials were protected regardless of intent or purpose. *Id.* at 670. Later, in *California Motor Transportation Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972), the Court held that "the right to petition extends to all departments of the Government." The Court also reiterated that there is no immunity where a challenged action is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor . . . ." *Id.* at 511 (quoting *Noerr,* 365 U.S. at 144).

10

The Court elaborated on the sham exception to the *Noerr-Pennington* immunity in *PRE,* 508 U.S. at 50. In that case, the Supreme Court outlined a two-part definition of sham litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," *Noerr, supra,* 365 U.S., at 144 81 S.Ct., at 533 (emphasis added), through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon," *Omni,* 499 U.S., at 380, 111 S.Ct., at 1354 (emphasis in original).

*Id.* at 60-61. The *PRE* Court also determined that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 57.

## II.     The *Noerr-Pennington* Doctrine and Kentucky Law

Historically, Kentucky courts have been presented with few opportunities to consider the applicability of the *Noerr-Pennington* doctrine. In *Eastern Kentucky Resources v. Arnett,* 892 S.W.2d 617 (Ky. App. 1995), a citizens group filed suit challenging a solid waste management plan. The solid waste facility developer filed an action against the citizens group asserting intentional interference with contractual relations and characterized the initial lawsuit as a "sham" under the *Noerr-Pennington* doctrine. *Id.* at 618. While the Court of Appeals noted that federal and state courts have applied the doctrine to petitioning activities outside the antitrust realm, including specifically zoning

11

cases, the court declined to address the doctrine, concluding it was unnecessary to its resolution of the case. *Id.* at 618-19. Three years later, this Court acknowledged the *Noerr-Pennington* doctrine in *Simpson v. Layhart,* 962 S.W.2d 392, 396 (Ky. 1998), an abuse of process case arising out of a zoning matter, but declined to address the doctrine given the propriety of summary judgment on the abuse of process claim on other grounds.

In 2004 the Court of Appeals applied the *Noerr-Pennington* doctrine in a zoning case. In *Stepner,* 170 S.W.3d at 413, Donald Stepner learned that adjoining property was to be rezoned to allow for increased density housing, allowing a developer to quadruple the number of houses per acre. The City of Florence adopted an ordinance rezoning the property per the developer's wishes. *Id.* Stepner and other neighboring landowners filed an unsuccessful appeal in Boone Circuit Court challenging the rezoning. *Id.* The developer then filed a civil complaint alleging abuse of process, wrongful use of civil proceedings, and intentional interference with contractual relations. *Id.* The developer claimed that Stepner damaged its business interests by filing a "frivolous" challenge to the rezoning decision. *Id.* The trial court dismissed both claims, concluding that the *Noerr-Pennington* doctrine shielded Stepner from liability. *Id.* at 413-14.

On appeal, the Court of Appeals applied the *Noerr-Pennington* doctrine and held that Stepner was shielded from liability on the abuse of process and wrongful use of civil proceedings claims. *Id.* at 416. Landowners, like Stepner, have an "absolute right to appeal the rezoning" because KRS 100.347(3) allows

12

"[a]ny person or entity claiming to be injured or aggrieved" to appeal. *Id*. at 415-16. "Thus, his subjective motivation, whatever it may have been, is irrelevant, and the sham exception to the *Noerr-Pennington* doctrine does not apply." *Id*. at 416. Given that Stepner had standing to appeal the zoning decision, "his appeal cannot be said to have been objectively baseless." *Id*. This Court denied discretionary review on September 14, 2005. Since *Stepner,* and until now, this Court has not been presented with the application of the *Noerr-Pennington* doctrine in the context of KRS 100.347 zoning appeals.[8]

### III.    The *Noerr-Pennington* Doctrine in Other Jurisdictions

Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, courts across the country have expanded the doctrine to protect First Amendment petitioning of the government in zoning litigation. In *Cove Road Development v. Western Cranston Industrial Park Associates,* 674 A.2d 1234 (R.I. 1996), property was rezoned to allow for a residential development and neighboring landowners contested the rezoning. After an unsuccessful appeal, the developer sued the neighboring landowners for abuse of process and malicious prosecution. *Id*. at 1236. The Rhode Island Supreme Court affirmed the trial court's dismissal of both claims on summary judgment. *Id*. at 1239.

---

[8] We note that the Court of Appeals recently addressed the *Noerr-Pennington* doctrine in *Willow Grande, LLC v. Cherokee Triangle Association, Inc.,* 2020 WL 4910127, *1 (Ky. App. August 21, 2020). Relying on *Stepner,* 170 S.W.3d 411, the Court of Appeals determined that "the [*Noerr-Pennington*] doctrine generally provides immunity from legal action to persons who bring a zoning appeal to induce the passage or enforcement of law or to solicit governmental action." *Id*. at *5. The Cherokee Triangle Association filed a motion for discretionary review in this Court on September 22, 2020. On February 9, 2021, we issued an order holding the *Willow Grande* case in abeyance pending final disposition of this case.

The Court held that "the constitutional protection of the right to petition is no less compelling in the context of common-law tort claims than in the framework of federal antitrust legislation." *Id.* at 1237. The Court was unpersuaded by the developer's contention that First Amendment protection is limited to petitioning activity at the zoning board and city council levels. *Id.* at 1237-38.

In a Utah case, neighboring property owners opposed a proposed commercial development near a local river. *Anderson Dev. Co. v. Tobias,* 116 P.3d 323, 327 (Utah 2005). The developer brought claims against the property owners for intentional interference with economic relations. *Id.* The trial court denied the property owners' motion for summary judgment that argued their petitions to the city council were privileged under the First Amendment and the *Noerr-Pennington* doctrine. *Id.* at 332. On appeal, the Supreme Court of Utah determined that the property owners' petitions to the city council were "genuinely designed to achieve their desired outcome—the denial of [the developer's] zoning application." *Id.* at 333. Therefore, the trial court erred in denying the property owners' motion for summary judgment on the intentional interference claim. *Id.*

The Supreme Court of Mississippi also applied the *Noerr-Pennington* doctrine in a zoning context in *Jourdan River Estates, LLC v. Favre,* 278 So. 3d 1135 (Miss. 2019). A yacht club sued neighboring property owners who opposed the development of hundreds of condominiums and a yacht basin, asserting fifteen causes of actions based on allegations that the property

14

owners delayed the development. *Id.* at 1140. For nearly seven years, the parties employed significant resources in litigating the rights of parties to a county road that allowed various property owners access to a major highway, which was essential for the purpose of the condominium development. *Id.* The Court held that the property owners' request that a county board deny the extension of the yacht club's conditional use permit for continued development of the condominium complex and yacht basin did not come within the sham exception to the *Noerr-Pennington* doctrine. *Id.* at 1152. In concluding their petitioning activities were not objectively baseless, the Mississippi Court focused on the amount of time and resources used to ascertain the rights of different parties and concluded that those efforts demonstrated that the litigation was not a sham. *Id.*

Although an intermediate court, the Appellate Court of Connecticut has applied and reaffirmed the application of the *Noerr-Pennington* doctrine in zoning litigation. In *Zeller v. Consolini,* 758 A.2d 376, 382 (Conn. App. 2000), the court applied the *Noerr-Pennington* doctrine to bar a developer's claims for tortious interference against nearby landowners who challenged the development of a mall. The court noted that the application of *Noerr-Pennington* to protect petitioning activity directed at local governments is well established in other jurisdictions. *Id.* at 380. The court held that the doctrine "subordinates antitrust considerations and commercial expediency to the constitutional rights of individuals and groups to petition their government." *Id.* at 381-82. Additionally, the court contemplated that

15

failure to apply the *Noerr–Pennington* doctrine aggressively may create a "chilling effect" on the first amendment right to petition in zoning and other matters. *See Ottensmeyer v. Chesapeake & Potomac Telephone Co.,* 756 F.2d 986, 993–94 (4th Cir.1985). Indeed, such a chilling effect can be a virtual deep freeze when individual citizens not versed in the legal system and without financial resources do not exercise potentially meritorious legal challenges for fear of costly and protracted, retributive litigation from opponents.

*Id.* at 382. The Connecticut Appellate Court recently reaffirmed the application of the *Noerr-Pennington* doctrine in zoning litigation in *Procurement, LLC v. Ahuja,* 234 A.3d 135 (Conn. App. 2020), holding that the lack of adequate notice of a rescheduled zoning hearing provided objectively plausible grounds for the underlying appeal, despite the fact that the protestor had lost the underlying appeal. The challenge to notice stemmed from the city's charter provisions, which permitted the zoning board to hold more than one public hearing "upon due notice." *Id.* at 146. The appellate court stated that a reasonable litigant "could deduce that notice is required for every public hearing, including a continuation." *Id.* at 149.

In addition to extending the *Noerr-Pennington* doctrine beyond antitrust cases, some states have adopted statutes specifically designed to prohibit "SLAPP" lawsuits, Strategic Lawsuits Against Public Participation. SLAPP lawsuits aim to harass, intimidate or silence those individuals who use their right to petition. Anti-SLAPP laws typically function by allowing the defendant, the person who exercised his or her petitioning rights, to file a motion to strike or dismiss because the case involves protected speech on a matter of public concern.

16

Approximately thirty-three states have some type of anti-SLAPP legislation.[9] These laws vary in the degree and type of procedural tools available to litigants and the protection offered to those exercising their First Amendment rights. California Code of Civil Procedure § 425.16, for example, recognizes that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." The statute renders a cause of action arising from the exercise of the right to petition or free speech subject to a special motion to strike, "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* Anti-SLAPP laws have existed in Washington state since 1989. In 2002, Revised Code of Washington 4.24.520 was amended to bring Washington law in line with court decisions that recognize that the "United States Constitution protects advocacy to government, regardless of content or motive,

---

[9] *See, e.g.,* Tennessee Code §§ 20-17-1001–04 (the Public Participation Act encourages and safeguards "the constitutional rights of persons to petition to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law. . . ." The Act provides that if legal action is filed in response to a person's exercise of their right to petition or freedoms of speech and association, that person may file a motion to dismiss the legal action.); Indiana Code §§ 34-7-7-1–10 (the anti-SLAPP law allows a party to use "an act in furtherance of a person's right to petition or free speech" that is "in connection with a public issue or an issue of public interest" as a defense to claims brought against them.); Texas Civil Practice & Remedies Code §§ 27.001-.011 (to protect the exercise of constitutional rights, Texas law allows a party to file a motion to dismiss in a legal action based on or in response to the party's exercise of their right to free speech, petition, or association). Additional states with anti-SLAPP laws include Georgia (Ga. Code § 9-11-11.1), Illinois (735 Ill. Comp. Stat. 110/15), New York (N.Y. Civ. Rights Law § 70-a) and Oklahoma (Okla. Stat. tit. 12, § 1430).

so long as it is designed to have some effect on government decision making." Wash. Rev. Code Ann. § 4.24.510 (West 2022). The statute affords a person who communicates a complaint or information to any branch of government immunity from civil liability.[10]

In 2021, Washington adopted the Uniform Public Expression Protection Act (UPEPA), designed to prevent SLAPP litigation that intends to silence and intimidate defendants from engaging in constitutionally-protected activities.[11] Five states, including Kentucky, have introduced UPEPA legislation, although Washington is the only state that has enacted the UPEPA as of March 1, 2022. The Kentucky legislation was introduced as House Bill 222 on January 5, 2022, passed in the House unanimously on February 18, 2022, and is currently pending in the Senate. House Bill 222 would create new KRS sections that establish procedures for dismissing legal actions filed in response to a party's exercise of free speech, right to petition, or right to association. The proposed legislation would also allow a party to appeal, as a matter of right, any order granting or denying a motion to dismiss filed in conjunction with this statute.

The extension of the *Noerr-Pennington* doctrine to zoning disputes in other jurisdictions, as well as the presence of anti-SLAPP legislation in most

---

[10] Some jurisdictions refer to immunity afforded to petitioners as Petition Clause immunity, "reserving the name, *Noerr-Pennington*, for antitrust cases." *See CSMN Inv., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020).

[11] *Public Expression Protection Act*, UNIFORM LAW COMMISSION (Feb. 28, 2022), https://www.uniformlaws.org/committees/community-home?Community Key=4f486460-199c-49d7-9fac-05570be1e7b1.

18

jurisdictions (including active consideration in Kentucky), underscores that protection of the First Amendment right to petition is crucial and requires vigilance. With this Opinion, we join those jurisdictions in applying *Noerr-Pennington* in the context of zoning disputes, an area where our legislature has granted "injured or aggrieved" parties such as the neighboring homeowners in this case an express right to seek recourse in the courts.

## IV. KRS 100.347 Creates a Statutory Right to Appeal Zoning Decisions

Section 115 of the Kentucky Constitution provides for appeals as a matter of right in all cases originating in our court system. However, a zoning decision and legislative action taken therefrom are not the equivalent of a court proceeding and its attendant rulings. In the absence of a matter of right appeal, KRS 100.347(3) creates a statutory right to appeal from a final action of the legislative body of any city, county, consolidated local government or urban-county government relating to a zoning map amendment.[12]

In enacting KRS 100.347, the legislature explicitly created three avenues for "injured or aggrieved" parties to appeal planning and zoning decisions. The neighboring landowners appealed the zoning decision under KRS 100.347(3), which states that

> Any person or entity claiming to be injured or aggrieved by any
> final action of the legislative body of any city, county, consolidated

---

[12] The Louisville Metro Planning and Zoning Commission is tasked with considering change in zoning requests. The Commission makes recommendations to the appropriate legislative body, here Louisville Metro Council, which has the final authority to approve or deny a change in zoning request. Metro Council voted to enact an ordinance that changed the zoning of the property at issue here on July 29, 2010.

local government, or urban-county government, relating to a map amendment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the map amendment, lies. Such appeal shall be taken within thirty (30) days after the final action of the legislative body. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The legislative body shall be a party in any such appeal filed in the Circuit Court.

An appeal from a zoning decision by a legislative body is "a matter of legislative grace, and not a right." *Taylor v. Duke,* 896 S.W.2d 618, 621 (Ky. App. 1995).[13]

As discussed in *Kenton County Board of Adjustment v. Meitzen,* 607 S.W.3d 586, 595 (Ky. 2020), by enacting KRS 100.347 the legislature intentionally created a narrow avenue to appeal zoning decisions. "By limiting the appeal process to certain injured or aggrieved persons or entities, the legislature has effectively prevented the filing of unnecessary and unfounded complaints by any citizen who simply disagrees with the board of adjustment's action." *Id.* These statutory appeals are not limited to neighboring property owners, like the homeowners here, but can be utilized by rezoning applicants or anyone otherwise injured or aggrieved by a zoning decision.

After the Louisville Metro Council voted to enact an ordinance that changed the zoning of the affected real property, the neighboring landowners, represented by Seiller Waterman, appealed the legislation that rezoned the land. The complaint, filed on August 26, 2010, included several claims but the

---

[13] *Taylor* involved a challenge to a planning and zoning commission decision pursuant to KRS 100.347(2). Because a zoning appeal from a legislative body is also a creature of statute, KRS 100.347(3), the *Taylor* court's designation of "legislative grace" is equally applicable in the context of subsection (3).

focal point was the allegation that the Commission acted unconstitutionally and in violation of KRS Chapter 100, by failing to give proper notice for the zoning hearings and failing to accord the neighboring homeowners an opportunity to be heard. In filing the action, the homeowners used a lawful and legislatively-prescribed means to challenge the development and zoning activities on substantive grounds.

## V. The *Noerr-Pennington* Doctrine Bars Bardstown Capital's Claim for Wrongful Use of Civil Proceedings and the Sham Exception Is Inapplicable

Seiller Waterman and the homeowners argue that the *Noerr-Pennington* doctrine bars Bardstown Capital's claim for wrongful use of civil proceedings.[14] We agree. Given the statutory right to appeal zoning decisions and the importance of the First Amendment right to petition, the *Noerr-Pennington* doctrine necessarily applies to zoning litigation in the context of appeals pursuant to KRS 100.347.

Here, the neighboring homeowners properly protested the zoning change through an avenue of recourse provided by the legislature to those persons or

---

[14] As is evident by now, this case presents an important opportunity for this Court to address the longstanding *Noerr-Pennington* doctrine and its applicability in Kentucky zoning matters. We recognize that Seiller Waterman and the homeowners also claim that Bardstown Capital did not specifically plead a lack of probable cause, an essential element of a wrongful use of civil proceedings claim. *See Mosier v. McFarland,* 106 S.W.2d 641, 642 (Ky. 1937) (holding that a lack of probable cause is an essential element of a wrongful use of civil proceedings claim and "must be alleged and proved . . . ."). Seiller Waterman and the homeowners suggest that the inadequacy of Bardstown Capital's complaint is the most direct basis for upholding the trial court's judgment. Given our ultimate conclusion that the *Noerr-Pennington* doctrine does in fact apply, and affords immunity to Seiller Waterman and the neighboring homeowners, we decline to address this argument.

21

entities injured or aggrieved. As the applicant that initiated the zoning proceedings, Bardstown Capital was a necessary party to the homeowners' appeal. KRS 100.347(4).[15] Therefore, Seiller Waterman and the homeowners are shielded from liability for filing the appeal by the *Noerr-Pennington* doctrine, unless the sham exception applies. We hold that it does not.

From the outset of the *Noerr-Pennington* doctrine, the Supreme Court recognized the possibility that some efforts to influence governmental action are "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor . . . ." *Noerr,* 365 U.S. at 144. A plaintiff relying on the sham litigation exception to overcome *Noerr-Pennington* immunity bears the burden of proving the two-part test established by the Supreme Court in *PRE,* 508 U.S. at 50. To reiterate that test, "sham" litigation must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* If that threshold is met, the court must then determine whether there is evidence of a subjective intent to use the governmental process to interfere directly with a competitor's business. *Id.* Stated differently, "[o]nly if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* Matters which concern a party's "motivations in bringing suit

---

[15] In the litigation underlying *Stepner,* 170 S.W.3d at 413, Stepner failed to name all owners of a development property in his KRS 100.347(3) appeal in circuit court, leading that court to dismiss the appeal.

[are] rendered irrelevant by the objective legal reasonableness of the litigation." *Id.* at 66.

The objectively reasonable prong is not based on hindsight. As the U.S. Court of Appeals for the Third Circuit recently held, "the essential question is not whether the suit succeeds, but whether the suit was a sham at the time it was filed." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 149 (3rd Cir. 2017) (citing *PRE,* 508 U.S. at 60 n.5). ("[W]hen the antitrust defendant has lost the underlying litigation, a court must resist the . . . temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." (internal quotations omitted)). As repeatedly noted, our legislature has given adjoining landowners an express statutory right to appeal if injured or aggrieved by a zoning decision and the exercise of that right is objectively reasonable, without regard to the eventual outcome of their claim. Moreover, the allegation in this case that proper notice for the zoning hearing was not given invokes the fundamental due process rights of the parties involved, rendering it far from "objectively baseless." *PRE*, 508 U.S. at 50.

As stated in *Stepner,* 170 S.W.3d at 416, if a party is genuinely aggrieved by the outcome of a zoning action, KRS 100.347 affords that party both the right and standing to challenge that action. In *Meitzen* we discussed the distinction between standing and jurisdiction.

> Standing, of course, in its most basic sense, refers to an integral component of the justiciable cause requirement underlying a trial court's jurisdiction. To invoke the court's jurisdiction, the plaintiff

23

must allege an injury caused by the defendant of a sort the court is able to redress. More specifically in this case, [s]tatutory standing refers to whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action. Statutory standing is simply statutory interpretation: the question it asks is whether [the legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury.

607 S.W.3d at 597 (internal quotations and citations omitted). The standing component of KRS 100.347(3) requires that a party must be "injured or aggrieved" by a legislative body's action.

Here, the plaintiffs in the zoning appeal were adjoining property owners who asserted that they were injured or aggrieved by the zoning decision, i.e., they had standing and a justiciable cause. The neighboring homeowners asserted that the zoning change would result in immediate and irreparable injury—loss or damage by being deprived of the use, value and enjoyment of their property. The exercise of their appeal rights was a legislatively-approved form of petitioning government and deserves the protection accorded by application of the *Noerr-Pennington* doctrine.

### CONCLUSION

Given the explicit statutory grant to adjoining property owners of the right to pursue appeals from zoning decisions, the *Noerr-Pennington* doctrine affords the neighboring homeowners and Seiller Waterman immunity from claims of wrongful use of civil proceedings. The trial court properly applied the doctrine and, as a result, did not err in granting summary judgment. We therefore reverse the Court of Appeals and remand to the trial court for

24

reinstatement of the summary judgment in favor of the neighboring homeowners and their attorneys.

Minton, C.J.; Conley, Lambert, and VanMeter, JJ. concur. Keller, J., concurs in result only. Nickell, J., not sitting.

COUNSEL FOR APPELLANTS,
SEILLER WATERMAN, LLC, and
BILL V. SEILLER:

Donald Kenneth Brown, Jr.
James Patrick Grohmann
O'Bryan, Brown & Toner, PLLC

COUNSEL FOR APPELLANTS,
TERRY MAUNEY; PHILLIP STEWART;
BETTIE STEWART; ELZIE WATSON;
and BRIDGETTE WATSON:

Stephen T. Porter

COUNSEL FOR APPELLEES:

Hans George Poppe, Jr.
Kirk A. Laughlin
The Poppe Law Firm