**BOURBON COUNTY JOINT PLANNING COMMISSION, Jim Alexander, Stan Galbraith, Ronnie Watts, Robert S. Berman, John Brennan, Jr., Bennie Bridges, Jr., Donnie Foley, Martin Doyle, William Reed, Ed Marcum, K.C. Jones, Norman Judy and Walter Lee True, Appellants,**

v.

**Laurance SIMPSON, Jr., A.P. Adair, Carey M. Adair, Adnee Hamilton, Buckner Hinkle, Sr., Norton Clay, Catesby W. Clay, Ben B. Ardery, Susan H. Clay, Susan T. Hinkle, John G. Spears, Lockhart Spears, Francis Carlton Colcord, III, W.C. Thompson and J. Morrow Richards, Appellees.**

**and**

**Harry LAYTART, Appellant,**

v.

**Laurance SIMPSON, Jr., A.P. Adair, Carey M. Adair, Adnee Hamilton, Buckner Hinkle, Sr., Norton Clay, Catesby W. Clay, Ben B. Ardery, Susan H. Clay, Susan T. Hinkle, John G. Spears, Lockhart Spears, Francis Carlton Colcord,**

III, W.C. Thompson, J. Morrow Richards, Bourbon County Joint Planning Commission and Members: Jim Alexander, Stan Galbraith, Ronnie Watts, Robert S. Berman, John Brennan, Jr., Walter Lee True, Martin Doyle, William Reed, Ed Marcum, K.C. Jones, Norman Judy and Donnie Foley, Appellees.

No. 89–CA–138–MR.

Court of Appeals of Kentucky.

May 11, 1990.

Rehearing Denied July 20, 1990.

Discretionary Review Denied
by Supreme Court Dec. 19, 1990.

Harry Laytart, Paris, pro se.

W. Henry Graddy, IV, Reeves & Graddy, Versailles, for Laurance Simpson, Jr., et al.

Henry C. Prewitt, Paris, for Bourbon County Joint Planning Com'n.

Before CLAYTON, EMBERTON and McDONALD, JJ.

McDONALD, Judge.

This is a planning and zoning case which, for no good reason, has become a procedural nightmare. However, we have sorted out the facts as follows.

Appellant Harry Laytart owns some farmland in Bourbon County. He entered an agreement with Woodford and Bonnie Wilson to sell them a five-acre tract of this land. Laytart then asked the Bourbon County Joint Planning Commission for a finding that this sale would not constitute a subdivision of land, necessitating a zoning change from agricultural to residential, but merely a "division of land for agricultural purposes" as defined in KRS 100.111(22). The planning commission approved Laytart's request at a public meeting held on August 21, 1986.

Appellee Laurance Simpson was present at the August 21 meeting and expressed some concern that the proposed land division was not actually for agricultural purposes. After the commission's ruling Simpson, along with fourteen others, appealed to the circuit court. These fifteen persons described themselves as residents and property owners of agricultural land in Bourbon County. An issue in the case is whether these parties had standing to contest the commission's actions in court.

The same fifteen appellants filed, along with their appeal, a complaint which asked for much of the same relief demanded in the appeal. Thus a second issue is whether the complaint was proper where a statutory right of appeal exists. The circuit court decided both issues in favor of the appellees.

In the meantime, Harry Laytart was forced to release the Wilsons from their contract to purchase his property. Laytart filed a counterclaim against the appellees, alleging abuse of process and interference with contract.

The circuit court was forced to make several rulings before convincing the various parties—Laytart, the planning commission and the appellees—that it had dealt with all of their issues. The upshot, however, was that the court dismissed all of the appellees' claims except one: in accordance with their demands the court remanded to the planning commission, for a full evidentiary hearing, the question of whether the sale of Laytart's five acres constituted a "subdivision" of land.

Since this sale had fallen through, the matter might have ended there as there was nothing on which to hold a hearing. The appellees have argued that a ruling by this Court on the procedural issues raised by the planning commission on appeal can have no prospective effect. We are inclined to agree but, given that that is true, we are baffled as to what "prospective effect" the circuit court's remand was supposed to have had since the land-sale contract which gave rise to this controversy no longer existed.

Be that as it may, the fact is that the planning commission held another public meeting on August 18, 1988. Laytart appeared at this hearing and again requested a finding that would allow him to sell off a slightly different five-acre parcel of land, to a different purchaser. The commission again approved his request. Subsequently, the circuit court dismissed Laytart's counterclaim as moot.

The state of this case now is as follows: The appellees maintain that Laytart's counterclaim was properly dismissed as moot since his most recent application was ap-

proved. For their part, they declare themselves satisfied at having received a full hearing.

■ The planning commission raises numerous issues on appeal. It argues that the circuit court lacked jurisdiction to entertain both an appeal and a complaint, that the appellees lacked standing to bring either, that the commission acted properly in granting Laytart's initial request and, finally, that the entire matter, except perhaps Laytart's counterclaim, was moot when it reached the circuit court and may be so now.

Laytart appeals essentially the same issues as the planning commission, though without any suggestion of mootness. He also, of course, argues that the dismissal of his counterclaim was improper.

We are inclined to agree with the planning commission. The appeal and complaint to the circuit court, and the procedural questions that stemmed from it, all arose from Laytart's application to sell a portion of his land to the Wilsons. When this contract was dissolved, nothing of the original matter appealed from remained. The circuit court nevertheless refused to dismiss for mootness, citing *Americans United for Separation of Church and State v. Board of Education*, 369 F.Supp. 1059 (E.D.Ky.1974). This case held that a defense based on mootness "is not viable where the parties would be free to resume challenged conduct in the absence of a substantive determination." *Id.* at 1061. We are of the opinion that subsequent events have rendered even this exception inapplicable. A judgment from this Court can have no practical effect on any procedural controversy stemming from the original contract. "[I]t is well established that where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed." *Louisville Transit Co. v. Department of Motor Transportation*, Ky., 286 S.W.2d 536, 538 (1956).

■ However, the same cannot be said of Laytart's counterclaim. The fact that he was successful in lining up new purchasers, and winning the right to sell them some property, does not automatically eliminate a cause of action arising from an entirely different contract. The undisputed facts are that Mr. Laytart desired to sell a portion of his land, a perfectly legal undertaking. He has maintained that his purchasers wanted to use their five-acre tract for agricultural purposes. The planning commission approved the sale, as well as a subsequent one under very similar conditions. That this first sale did not go through is due to the efforts of the appellees. Laytart later declared bankruptcy.

■ Laytart's counterclaim charges abuse of process and interference with contract. Both of these torts are recognized in Kentucky. Abuse of process has been defined as "the employment of legal process for some other purpose other than that which it was intended by the law to effect." *Raine v. Drasin*, Ky., 621 S.W.2d 895, 902 (1981). The crux of an abuse of process action, for the plaintiff, lies in establishing the improper purpose: "The purpose for which the process is used, once it is issued, is the only thing of importance." *Williams v. Central Concrete Inc.*, Ky. App., 599 S.W.2d 460, 461 (1979), citing W. Prosser, *Torts* § 121 (4th ed. 1971) at 865. Although malice is an element, "it seems well settled that, except on the issue of punitive damages, this does not mean spite or ill will or anything other than the improper purpose itself for which the process is used[.]" *Id.*

■ Similarly, in pursuing an interference with contract claim, "a party may not recover ... in the absence of proof that the opposing party 'improperly' interfered with his prospective contractual relation." *National Collegiate Athletic Association v. Hornung*, Ky., 754 S.W.2d 855, 858 (1988). Once again, malice must be shown, but only in the sense of lack of justification for the interference. *Id.* at 859. It is a defense if the alleged interferer has acted in good faith to protect a legitimate interest of his own. *See Restatement (Second) of Torts* § 773 (1979); *Hornung, id.*

We think that either of these torts could, conceivably, fit the situation at hand. Laytart's counterclaim at least states a cause of action which is not moot, and a dismissal was improper. However, since the dismissal was based in part on matters outside the pleadings, we will treat it as a summary judgment in favor of the appellees. CR 12.02. This narrows our review to a determination of whether the trial court could have found that (1) the counterclaim raised no genuine issue of material fact, and (2) the appellees were entitled to judgment as a matter of law. *Sexton v. Taylor County*, Ky.App., 692 S.W.2d 808, 809–10 (1985).

We are of the opinion that Laytart's complaint raises issues which cannot be fully resolved on the record as it appears now. Where the record reveals a genuine factual issue, summary judgment is premature. *Bell v. Courier–Journal and Louisville Times Company*, Ky., 402 S.W.2d 84, 86 (1966).

What remains at issue is the intent of the parties. By claiming abuse of process and interference with contract, Laytart has alleged that the appellees acted with an improper purpose or without justification. The burden of proof is on Laytart, and it is a difficult one: the appellees are entitled to attend planning commission hearings, and "injured or aggrieved" persons have a right of appeal from adverse decisions of that body. *See* KRS 100.347. However, we do not think that the grant of a statutory privilege automatically exempts those who use it from accusations of improper motive.

We reiterate, the burden of proof may be a difficult one, but Laytart has been given no opportunity to meet it. We conclude that Laytart should be allowed to pursue his cause of action, however quixotic it may seem.[1]

Therefore, the dismissal of Laytart's counterclaim is reversed and that portion of this case is remanded to the circuit court. On all other issues we affirm.

---

1. Since Laytart has been declared a bankrupt, it may be that the trustee in bankruptcy will succeed him. However, that is mercifully not an issue before us.

CLAYTON, J., concurs.

EMBERTON, J., concurs in result only.