**HARRODSBURG INDUSTRIAL WAREHOUSING, INC., and Riley & Peavler, LLC, Appellants,**

v.

**MIGS, LLC and Harrodsburg/Mercer County Industrial Development Authority, Appellees.**

**No. 2003–CA–002544–MR.**

Court of Appeals of Kentucky.

Feb. 25, 2005.

Discretionary Review Denied by Supreme Court Feb. 15, 2006.

G. Cliff Stidham, Lynn C. Stidham, Stidham & Associates, P.S.C., Lexington, KY, for appellants.

Bradley S. Guthrie, Harrodsburg, KY, for appellee, MIGS, LLC.

Spencer D. Noe, Bowles, Rice, McDavid, Graff & Love, LLP, Lexington, KY, for appellee, Harrodsburg/Mercer County Industrial Development Authority.

Before SCHRODER, TAYLOR, and VANMETER, Judges.

## OPINION

TAYLOR, Judge.

Harrodsburg Industrial Warehousing, Inc. and Riley & Peavler, LLC (collectively referred to as Harrodsburg Warehousing) bring this appeal from a December 21, 2000, summary judgment of the Mercer Circuit Court dismissing Count IV of the complaint and an October 30, 2003, judg-

ment dismissing Counts II and III of the complaint.[1] We affirm.

On July 5, 1999, Harrodsburg Warehousing entered into a Real Estate Sale and Purchase Agreement (Purchase Agreement) with Harrodsburg/Mercer County Industrial Development Authority (Industrial Authority) for the purchase of a twenty-two acre tract of land located within the Gene C. Royalty Industrial Park (Industrial Park). The purchase price for the twenty-two acres was $220,000.00. The Industrial Authority was required to deliver fee-simple title to Harrodsburg Warehousing on or before thirty days from the date of execution of the Purchase Agreement. Harrodsburg Warehousing sought to develop a warehouse facility upon the property and intended to lease the property to its customer, Bay West Paper Company (Bay West).

On July 21, 1999, MIGS, LLC (MIGS) filed Civil Action No. 99–CI–00194 against the Industrial Authority.[2] MIGS had purchased property in the Industrial Park in March 1998. MIGS alleged the Industrial Authority represented to MIGS that no other land in the Industrial Park would be sold for commercial and/or industrial warehousing space. MIGS also filed a Notice of Lis Pendens upon the twenty-two acre tract on July 28, 1999.

As a result of the pending lawsuit against the Industrial Authority and the filing of the Lis Pendens, the Industrial Authority and Harrodsburg Warehousing entered into an Escrow Agreement on November 24, 1999. Under the Escrow Agreement, the Industrial Authority exe-

cuted and delivered to Harrodsburg Warehousing a general warranty deed conveying fee-simple title to the twenty-two acre tract, and the purchase price ($220,000.00) was deposited into an escrow account. Harrodsburg Warehousing later recorded the deed of conveyance.

Eventually, MIGS prevailed in Civil Action No. 99–CI–00194 against the Industrial Authority. A jury determined that the Industrial Authority had committed fraud. Before the jury's verdict in favor of MIGS, the Industrial Authority and MIGS entered into a partial settlement agreement. Under this agreement, MIGS and the Industrial Authority agreed that if MIGS prevailed at trial its only remedy would be an injunction forbidding "the use of real property held by the Industrial Authority ... for lease or sale, in any manner or form, of industrial warehousing space for a period of fifteen (15) years from the date of judgment." Since MIGS prevailed upon its fraud claim, the circuit court entered an injunction on March 29, 2001, restricting the use of the property (including the twenty-two acre tract) in the Industrial Park in accordance with the terms of the settlement agreement.

Harrodsburg Warehousing then filed the instant action alleging, *inter alia,* breach of contract against the Industrial Authority and the torts of intentional interference with existing and prospective contracts against MIGS. On December 21, 2000, summary judgment was entered dismissing Harrodsburg Warehousing's claim for breach of contract (Count IV) against the

---

1. Count I of the complaint, alleging abuse of process, was dismissed by the circuit court by order dated December 27, 2000. No issues surrounding this dismissal have been raised on appeal.

2. Harrodsburg Industrial Warehousing, Inc. (Harrodsburg Warehousing) unsuccessfully attempted to intervene in Civil Action No. 99–CI–00194. The circuit court determined that Harrodsburg Warehousing had no right to intervene, and this Court affirmed the decision in Appeal No.2001–CA–001150–MR.

Industrial Authority.[3] Later, on October 30, 2003, the circuit court entered judgment dismissing Harrodsburg Warehousing's claims of intentional interference with existing and prospective contractual relations (Counts II and III). This appeal follows.

Harrodsburg Warehousing initially argues the circuit court erred by entering summary judgment dismissing its breach of contract claim against the Industrial Authority. Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky. 1991). We believe no material issue of fact exists and resolution of this appeal thus centers upon questions of law.

■ Harrodsburg Warehousing specifically asserts the Industrial Authority breached the Purchase Agreement by failing to convey "[a]n unencumbered, good, marketable fee simple title, free of lien." The Industrial Authority delivered to Harrodsburg Warehousing a general warranty deed conveying fee-simple title to the twenty-two acre tract. Harrodsburg Warehousing recorded the deed. By accepting and recording the deed, we believe the merger doctrine operates to extinguish the Purchase Agreement.

■ It has been held "[u]nder the merger doctrine, upon delivery and acceptance of a deed the deed extinguishes or supercedes the provisions of the underlying contract for the conveyance of the realty." *Drees Co. v. Osburg,* 144 S.W.3d 831, 832 (Ky.App.2003). Thus, the merger doctrine ordinarily extinguishes the provisions of a purchase agreement for the sale of real property upon acceptance of a deed

conveying title to said property. The exceptions to the merger doctrine are fraud, mistake, or contractual agreement clearly not intended to be merged into the deed. 77 Am.Jur.2d *Vendor and Purchaser* § 286 (1997).

■ Under the facts of the case, we conclude the Purchase Agreement "merged" into the deed; hence, Harrodsburg Warehousing is precluded from maintaining a breach of contract action under the Purchase Agreement. However, we do not believe the Escrow Agreement merged into the deed. The clear language of the Escrow Agreement indicates that the parties intended this agreement to survive the delivery and acceptance of the deed. Additionally, we are of the opinion the Escrow Agreement provided the sole contractual remedy to Harrodsburg Warehousing.

■ It is axiomatic that interpretation of a contract is an issue of law for the court. *See Cinelli v. Ward,* 997 S.W.2d 474 (Ky.App.1998). Here, the Escrow Agreement was entered into by the parties in response to MIGS's institution of Civil Action No. 99–CI–00194. As evidenced by the Escrow Agreement, the parties anticipated that the Industrial Authority might not be capable of conveying the twenty-two acre tract free of restriction and specifically provided Harrodsburg Warehousing a remedy:

> Purchaser, at its option, may record the Deed prior to termination of this Escrow Agreement. If within six months from the date of this Escrow Agreement the Lis Pendens is not removed by MIGS, LLC voluntarily or by Order of the Mercer Circuit Court which is final and non-appealable, and the Property is

---

3. This summary judgment was interlocutory as it did not include Ky. R. Civ. P. 54.02 language.

not otherwise free and clear of all encumbrances such that good and marketable fee simple title, free of any liens and encumbrances, can be conveyed by Seller to Purchaser as required by the Purchase Agreement, Purchaser, as its option, may terminate this Escrow Agreement by written notice to all parties to this Agreement. If this Escrow Agreement is terminated by Purchaser, Purchaser shall be entitled to the escrow funds upon delivery of a deed to Seller conveying all of the interest in the Property previously conveyed by Seller to Purchaser, free and clear of any liens or encumbrances created by the Purchaser.

Since the restriction was not removed, we interpret the Escrow Agreement as providing Harrodsburg Warehousing its sole contractual remedy. The Escrow Agreement specifically provides that if the restriction was not removed Harrodsburg Warehousing had the right to "terminate" the agreement and be refunded the entire purchase price. It is patently obvious the Escrow Agreement's singular purpose was to address the respective rights of the parties should the restriction not be removed. As to those rights, we must interpret the Escrow Agreement as being paramount and as setting forth Harrodsburg Warehousing's sole contractual remedy in the event such restriction was not removed.

In sum, we conclude the circuit court properly granted summary judgment dismissing Harrodsburg Warehousing's claim for breach of the Purchase Agreement.

■ Harrodsburg Warehousing also asserts that the circuit court committed error by entering judgment dismissing its claims of intentional interference with an existing business contract and with a prospective contractual relationship. Specifically, Harrodsburg Warehousing contends that MIGS improperly interfered with its existing contractual relationship with the Industrial Authority and with its prospective contractual relationship with Bay West.

■ It must be noted that MIGS filed a motion to dismiss and/or motion for summary judgment seeking to dismiss the claims of intentional interference with an existing contractual relationship and with a prospective contractual relationship. Therein, MIGS asserted that "the claims fail to state a cause of action upon which relief may be granted or there is no genuine issue of material fact, and defendants are entitled to judgment as matter of law." MIGS attached to the motion a memorandum which included exhibits that constituted matters outside the pleadings. Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion must be treated as one for summary judgment. *Ferguson v. Oates*, 314 S.W.2d 518 (Ky.1958). Accordingly, we have treated the judgment as a summary judgment and undertake a review in accordance with the summary judgment standard of review.

The *Restatement (Second) of Torts* § 766 (1979) correctly states the legal requirements to prevail upon a claim of intentional interference with an existing contract:

> One who intentionally and ***improperly interferes*** with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Id.* (Emphasis added). The *Restatement (Second) of Torts* § 766B (1979) sets forth

the elements necessary to establish a claim for intentional interference with a prospective contractual relation:

> One who intentionally and ***improperly interferes*** with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* (Emphasis added).

The primary issue in this appeal centers upon whether MIGS's institution of Civil Action No. 99–CI–00194 against the Industrial Authority constituted an "improper interference" within the meaning of *Restatement (Second) of Torts* §§ 766 and 766B. In determining whether "interference" should be considered improper, we are guided by the factors of *Restatement (Second) of Torts* § 767 (1979):

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

In *National Collegiate Athletic Ass'n v. Hornung,* 754 S.W.2d 855 (Ky.1988), our Supreme Court adopted the foregoing sections of the *Restatement* as being reflective of prevailing law in Kentucky. In so doing, the Supreme Court commented upon the requirement of improper interference:

> From these authorities, it is clear that to prevail a party seeking recovery must show malice or some significantly wrongful conduct. In *Prosser and Keeton on Torts* § 130 (W.P. Keeton ed. 5th ed.1984), this is stated as follows:
>
> > [T]he [interference] cases have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it. . . .
> >
> > [S]ome element of ill will is seldom absent from intentional interference; and if the defendant has a legitimate interest to protect, the addition of a spite motive usually is not regarded as sufficient to result in liability.

*Hornung,* 754 S.W.2d at 859.

■ To demonstrate improper interference, it was incumbent upon Harrodsburg Warehousing to have asserted facts, which if true, would show that MIGS acted maliciously or engaged in wrongful conduct. The institution or threatened institution of a groundless lawsuit may, of course, satisfy such a requirement. Obviously, a groundless lawsuit may have been initiated maliciously and without good cause. However, we hold that a civil action completely and finally resolved in favor of a party cannot be, as a matter of law, considered improper interference with a plaintiff's existing or prospective business relations under *Restatement (Second) of Torts* §§ 766 and 766B. Indeed, a successful civil action can be neither malicious nor improper.

Harrodsburg Warehousing cites this Court to *Bourbon County Joint Planning Comm'n v. Simpson,* 799 S.W.2d 42 (Ky. App.1990) in support of its argument. In *Simpson,* the civil action was not completely and finally resolved in appellee's favor; rather, the appeal was remanded for fur-

ther proceedings. Hence, we view *Simpson* as distinguishable.

Accordingly, we hold that MIGS's institution of Civil Action No. 99–CI–00194 was not, as a matter of law, improper interference with Harrodsburg Warehousing's existing contract with the Industrial Authority or with its prospective contractual relations with Bay West. We, thus, conclude that summary judgment dismissing Counts II, III and IV of the complaint was proper.

For the foregoing reasons, the summary judgment of the Mercer Circuit Court is affirmed.

ALL CONCUR.