RENDERED: MAY 1, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0866-MR

CARL F. CORVIN AND CHARITO M.
CORVIN                                                  APPELLANTS


                 APPEAL FROM HARDIN CIRCUIT COURT
v.         HONORABLE ELISE GIVHAN SPAINHOUR, SPECIAL JUDGE
                    ACTION NO. 24-CI-01603


HARDIN COUNTY BOARD OF
EDUCATION; DONNA BOYD;
MARY ANN BENSON; STEPHEN
REESOR; AND THIRD RESTATED
THERESA J. REESOR REVOCABLE
LIVING TRUST                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND L. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: Carl and Charito Corvin appeal from an order of

the Hardin Circuit Court which denied their Kentucky Uniform Public Expression

Protection Act (KUPEPA) motion to dismiss the counterclaims of the Hardin

County Board of Education. The court held that an exception to KUPEPA applied

that prevented the granting of the motion. Alternatively, the court held that the Board sufficiently pleaded its counterclaims to survive the motion. We agree that the motion was properly denied and affirm.

## FACTS AND PROCEDURAL BACKGROUND

This case involves two parcels of neighboring land. One parcel is 16 acres of land owned by the Third Restated Theresa J. Reesor Revocable Living Trust ("the Trust"), and that parcel contains a historical home called the William Bush House. The other parcel is 100 acres of land owned by the Reesor Family Limited Partnership ("the Partnership"). The Trust's three trustees are also members of the Partnership. The Hardin County Board entered into a contract with the Partnership to purchase the Partnership's parcel of real estate in order to construct a new school. The Trust also gave the Board a right of first refusal for the 16-acre trust property.[1] Should the Trust receive an offer for the 16 acres, the Board would have the option to purchase that parcel if it agreed to terms that were substantially similar to the offer. Deciding not to wait for an offer that they would have to counter, the Board submitted its own offer to the trustees for the Trust parcel at a proposed price of $1,280,000.00. The offer also indicated that the Board intended to demolish the William Bush House.

---

[1] It is unclear why the Trust was involved with a real estate purchase between the Partnership and the Board.

Mr. Corvin is one of the beneficiaries of the Trust. When he and his wife heard about the proposed sale of the Trust property and the Board's intention to demolish the William Bush House, they tendered an offer to the Trust to purchase the property for $1,360,000.00. This offer contained an escalation clause which would increase their purchase price in increments of $10,000.00 to a maximum of $1,536,000.00. Appellants' proposed contract further promised to preserve the William Bush House for 30 years. The trustees then notified the Trust's beneficiaries that it found said offer "acceptable" and forwarded the offer to the Board in light of the right of first refusal.

The Board then made another offer on the property for a purchase price of $1,536,100.00. This offer did not commit to preserving the William Bush House like Appellants' offer did. The Trust then notified the beneficiaries of the Board's increased offer. Appellants, through counsel, sent an e-mail to the trustees indicating that, because the Board did not commit to preserving the William Bush House, they did not make a substantially similar offer to that of Appellants; therefore, the offer from Appellants became binding on the Trust. Counsel also indicated that if the Trust went through with selling the land to the Board, Appellants would take legal action. Mr. Corvin sent a copy of this e-mail to the Board.

The trustees later communicated with the beneficiaries that the Trust was going to accept the Board's offer. A little later, the Trust provided a report to the beneficiaries which referenced an appraised amount for the Trust property. That appraisal was for $1,900,000.00. Thereafter, Appellants offered to purchase the Trust property for $1,910,000.00. This offer also included a covenant to preserve the William Bush House. Appellants received no response to this offer.

On September 11, 2024, Appellants filed the underlying lawsuit. The complaint brought claims against the Trust and trustees for breach of fiduciary duties and breach of contract. Appellants also requested a declaratory judgment finding that they had a contract for the purchase of the Trust property, that the Trust should be estopped from selling to the Board, and that the Trust specifically perform and follow through on the contract to sell the property to Appellants.[2] Finally, Appellants requested injunctive relief to prevent the Trust from selling the property to the Board and requested that the trustees be removed from their control of the Trust. All these claims were brought against the Trust and trustees only. The Board was named as a defendant in the suit; however, no claims were raised against it. Appellants indicated that the Board was included in the suit so it could raise any claims it believed it had to the Trust property.

---

[2] Appellants claim that when the trustees indicated that Appellants' offer was acceptable, that created a binding contract.

-4-

On September 12, 2024, the Trust and the Board entered into a purchase agreement for the Trust real estate. The purchase price was $1,536,100.00 and the agreement did not require the Board to preserve the William Bush House. The Board then agreed to not close on the property until litigation was concluded.

On September 30, 2024, the Board filed its answer to Appellants' complaint and asserted counterclaims against Appellants. The first counterclaim was for tortious interference with business relations. The Board claimed that, by threatening to file a lawsuit and then following through on doing so, Appellants were interfering with its ability to acquire the Trust property pursuant to the right of first refusal agreement. The second counterclaim was for abuse of process. The Board alleged that Appellants only filed the lawsuit to force it to increase the amount of money it was willing to pay for the property, coerce it to preserve the William Bush House, or to convince the Board to extract itself from the sale of the Trust property. The Board also sought a declaration of rights claiming that it had a valid agreement to purchase the Trust property. Finally, the Board sought punitive damages.

On October 21, 2024, Appellants filed the underlying KUPEPA motion seeking to dismiss the Board's counterclaims of interference with business relations and abuse of process. Appellants argued that the counterclaims sought to

prevent Appellants from exercising their right to petition the court to adjudicate their claims. Following briefing on the issue by the parties, oral argument was heard on December 12, 2024. On June 17, 2025, the court entered an order denying the motion. The court held that the KUPEPA statute contained an exception that applied to the case. Specifically, cases involving real property are not subject to KUPEPA. The court also ruled that, in the alternative, the Board's claims were sufficient to survive a KUPEPA challenge. This appeal followed.

## **KUPEPA**

KUPEPA is legislation that "establish[es] procedures for dismissing legal actions filed in response to a party's exercise of free speech, right to petition, or right to association." *Davenport Extreme Pools and Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 150 (Ky. App. 2024) (internal quotation marks and citation omitted). Kentucky Revised Statutes (KRS) 454.462 sets forth the scope of KUPEPA. That statute states:

> (1) Except as otherwise provided in subsection (2) of this section, KRS 454.460 to 454.478 applies to a cause of action asserted against a person based on the person's:
>
> > (a) Communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
> >
> > (b) Communication on an issue under consideration or review in a legislative,

-6-

executive, judicial, administrative, or other governmental proceeding; or

(c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, as guaranteed by the United States Constitution or Kentucky Constitution, on a matter of public concern.

(2) (a) Except as provided in paragraph (b) of this subsection, KRS 454.460 to 454.478 shall not apply to a cause of action asserted:

1. Against a governmental unit or an employee or agent of a governmental unit acting or purporting to act in an official capacity;

2. By a governmental unit or an employee or agent of a governmental unit acting in an official capacity to enforce a law to protect against an imminent threat to public health or safety;

3. Against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication or lack of communication related to the person's sale or lease of the goods or services;

4. Against a person named in a civil suit brought to establish or declare real property possessory rights, use of real property, recovery of real property, quiet title to real property, or other claims relating to real property;

5. Seeking recovery for bodily injury, wrongful death, or survival, or to statements made regarding that legal action;

-7-

6. Under the Kentucky Insurance Code or arising out of an insurance contract;

7. Based on a common law fraud claim;

8. Under KRS Chapters 401 to 407;

9. Under KRS Chapter 337, 338, 339, 342, 344, or 345, including claims of negligent supervision, retention, or infliction of emotional distress; wrongful discharge in violation of public policy; whistleblowing, including KRS 61.101 to 61.103; or enforcement of employee rights under civil service, collective bargaining, or handbooks and policies; or

10. Under the Kentucky Consumer Protection Act, KRS 367.110 to 367.300.

(b) KRS 454.460 to 454.478 applies to a cause of action asserted under paragraph (a) of this subsection when the cause of action is:

1. An action against a person arising from any act of that person, whether public or private, related to the gathering, receiving, posting, or processing of information for communication to the public, whether or not the information is actually communicated to the public, for the creation, dissemination, exhibition, or advertisement or other similar promotion of a dramatic, literary, musical, political, journalistic, or otherwise artistic work, including audio-visual work regardless of the means of distribution, a motion picture, a television or radio program, or an article published in a newspaper, Web site, magazine, or other platform, no matter the method or extent of distribution; or

2. An action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluation of consumer complaints, or reviews or ratings of businesses.

KRS 454.462.

KRS 454.472 sets forth the requirements for a court to dismiss a cause of action pursuant to KUPEPA.

(1) In ruling on a motion under KRS 454.464, the court shall dismiss with prejudice a cause of action, or part of a cause of action, if:

(a) The moving party establishes under KRS 454.462(1) that KRS 454.460 to 454.478 applies;

(b) The responding party fails to establish under KRS 454.462(2) that KRS 454.460 to 454.478 does not apply; and

(c) Either:

1. The responding party fails to establish a prima facie case as to each essential element of the cause of action; or

2. The moving party establishes that:

a. The responding party failed to state a cause of action upon which relief can be granted; or

b. There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

-9-

of law on the cause of action or part of the action.

(2) A voluntary dismissal without prejudice of a responding party's cause of action, or part of a cause of action, that is the subject of a motion under KRS 454.464 does not affect a moving party's right to obtain a ruling on the motion and seek costs, attorney's fees, and expenses under KRS 454.478.

(3) A voluntary dismissal with prejudice of a responding party's cause of action, or part of a cause of action, that is the subject of a motion under KRS 454.464 establishes for the purpose of KRS 454.478 that the moving party prevailed on the motion.

KRS 454.472. In addition, KRS 454.476 allows for an immediate appeal of an order granting or denying a KUPEPA motion to dismiss, and KRS 454.478 allows the court to award attorney fees and litigation expenses to the prevailing party.

> [KUPEPA] is most akin to an expedited motion to dismiss for failure to state a claim upon which relief may be granted or a motion for summary judgment. Appellate review of either of those motions is *de novo. See, e.g.*, *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) ("Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue [*de novo*]."), and *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 445 (Ky. 2005) ("Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*.") (citing *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App. 2000)). Accordingly, we likewise review *de novo* the Trial Court's decision to grant or deny a motion filed under the [KUPEPA].

-10-

*Davenport*, 698 S.W.3d at 150.

> [T]he limited issue under the [KUPEPA] is whether the burden under KRS 454.472(1) has been met, and that burden aligns with pre-existing procedural mechanisms. KRS 454.472 requires satisfaction of three prongs before granting the motion to dismiss. In the first two prongs, the moving party must establish that the cause of action arose during, or relates to, one of the three covered classes of communication, KRS 454.462(1)(a)-(c), and the non-moving party must fail to establish that one of the ten, exclusionary instances applies, KRS 454.462(2)(a).

*Id.* at 152. For the third prong, in order for the moving party to prevail, the respondent must fail to establish a *prima facie* case as to the cause of action and the movant must show the respondent did not state a claim for which relief can be granted or that the movant is entitled to summary judgment. *Id.*

> These burdens of proof do not alter the standards currently existing in the Kentucky Rules of Civil Procedure ("CR"). Parties can already file motions to dismiss, CR 12.02, and motions for summary judgment, CR 56, which are analyzed under the *de novo* standards announced in KRS 454.472(1)(c)2.a. and b. respectively (and mentioned above). And, as it regards KRS 454.472(1)(c)1. and a need to establish a *prima facie* showing of each, essential element of the causes of action, we note that we have previously defined a *prima facie* case as that:

>> . . . which if unrebutted or unexplained is sufficient to maintain the proposition, and warrant the conclusion to support which it has been introduced but it does not shift the general burden of proof, and stands only until the contrary is shown.

-11-

*Kroger Limited Partnership I v. Boyle County Property Valuation Administrator*, 610 S.W.3d 332, 337 (Ky. App. 2020) (quoting *Prudential Ins. Co. of Am. v. Tuggle's Adm'r*, 254 Ky. 814, 72 S.W.2d 440, 443 (1934)). This requirement is already subsumed into the standards for dismissals and summary judgments. *See, e.g.*, *Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011) (noting that on a motion to dismiss for lack of jurisdiction, the plaintiff "'need only make a *prima facie* showing of jurisdiction'") (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)); *Brown v. Griffin*, 505 S.W.3d 777, 783 (Ky. App. 2016) (upholding a grant of summary judgment because "Brown failed to establish a *prima facie* case of medical negligence – duty, breach and consequent injury"). Accordingly, no vested rights are altered or otherwise impaired.

*Id.* at 152-53.

## ANALYSIS

In the order on appeal, the trial court found that the first prong of KUPEPA was met due to KRS 454.462(1)(b), that communications at issue were "on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding[.]" This KUPEPA prong was not appealed; therefore, we will accept this conclusion as valid and move on. As for the second KUPEPA prong, the court held that an exception, KRS 454.462(2)(a)4., applied to remove the case from the KUPEPA procedure. KRS 454.462(2)(a)4. states that KUPEPA does not apply in a cause of action "[a]gainst a person named in a civil suit brought to establish or declare real property

-12-

possessory rights, use of real property, recovery of real property, quiet title to real property, or other claims relating to real property[.]" The court believed that this exception applied because the main issue in the case was the Trust property. Appellants argue that the court erred in concluding that KRS 454.462(2)(a)4. applied. Appellants claim that the Board's counterclaims are torts, that the Board is seeking monetary damages, and that the counterclaims are not causes of action relating to real property. We agree with Appellants.

Appellants cite to Washington state's version of KUPEPA and an unpublished Washington state case as persuasive authority. Washington has a statute similar to KUPEPA and that statute has a real property exception as well. Wash. Rev. Code Ann. § 4.105.010(3)(a)(v) states that Washington's Uniform Public Expression Protection Act does not apply "[a]gainst a person named in a civil suit brought to establish or declare real property possessory rights, use of real property, recovery of real property, quiet title to real property, or related claims relating to real property[.]" This language is similar to the KUPEPA exception applied in this case.

In *Dimension Townhouses, LLC v. Leganieds, LLC*, 29 Wash. App. 2d 1022 (2024),[3] Dimension Townhouses, LLC tried to get permission from the City of Bruen, in Washington, to subdivide a parcel of property Dimension owned.

[3] Cited pursuant to Kentucky Rules of Appellate Procedure (RAP) 41.

-13-

During this process, Leganieds' attorney contacted the city indicating that it owned a portion of Dimension's property and did not consent to the division of the parcel. This ultimately caused the city to deny permission to subdivide the parcel until the legal aspects of the different ownerships could be determined. Dimension then sued Leganieds and raised multiple claims. One cause of action was for tortious interference.

Leganieds moved to dismiss the tortious interference claims pursuant to Washington's version of KUPEPA, arguing that the statements it made to the city were protected. Dimension claimed that the statute did not apply because of the real property exception. That Washington Court of Appeals held that,

> [w]hile the facts underlying Dimension's tortious interference claim concern real property, the tortious interference claim is a tort claim for damages. Dimension's tortious interference claim asserts that Leganieds intentionally interfered with their subdivision application and caused it to stall and ultimately expire. The outcome of a successful tortious interference claim would result in a damages award – which is what Dimension sought. A successful claim for tort damages would not "establish or declare" possessory rights, use rights, or quiet title to Dimension's property. Dimension failed to establish that an exception to UPEPA applies.

*Id.* at *5.

We find this reasoning persuasive. To reiterate, the real property exception in the KUPEPA states that KUPEPA does not apply to causes of action "[a]gainst a person named in a civil suit brought to establish or declare real

-14-

property possessory rights, use of real property, recovery of real property, quiet title to real property, or other claims relating to real property[.]" KRS 454.462(2)(a)4. Appellants argue that the Board's claims are torts and are not claims concerning real property; however, the Board claims that their counterclaims are "other claims relating to real property."

> When engaging in statutory interpretation,
>
> our main goal is "to give effect to the intent of the General Assembly." The clearest indicator of that intent is the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." And "[w]here the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as written."

*Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014) (footnotes and citations omitted). "Generally, [t]he statute must be read as a whole and in context with other parts of the law. All parts of the statute must be given equal effect so that no part of the statute will become meaningless or ineffectual." *Kentucky Department of Corrections v. Dixon*, 572 S.W.3d 46, 49 (Ky. 2019) (internal quotation marks and citation omitted).

After examining the statute and taking into consideration KRS 454.462(2)(a)4. as a whole, we do not believe the Board's counterclaims are "other claims relating to real property" as it pertains to the KUPEPA exception. While

-15-

the phrase "other claims relating to real property" is broad, we believe KRS 454.462(2)(a)4. applies to causes of action concerning the ownership or other possessory interests in real property. The Board's counterclaims of tortious interference with business relations and abuse of process concern alleged tortious actions committed by Appellants. The Board is seeking monetary damages for these two counterclaims, not the possession, use, or ownership of real estate. It is true that the Board's counterclaims are set forth in a lawsuit where the initiating complaint concerns real property interests, but these two counterclaims do not concern property interests. In fact, Appellants did not seek to dismiss the Board's declaration of rights counterclaim, the one counterclaim that would be excepted via KRS 454.462(2)(a)4.

Even though we conclude that the court erred in holding that the real property exception applied, this does not end our analysis. The trial court also held, alternatively, that the Board had sufficiently pleaded their counterclaims in order to survive a KUPEPA motion. This is the third KUPEPA prong. In order for the Board to defeat the KUPEPA motion, it had to "establish a [*prima facie*] case as to each essential element of the cause of action[.]" KRS 454.472(1)(c)1.

There are two counterclaims that we must examine to determine if the Board established a *prima facie* case as to each element of the claims. We will

first address the tortious interference with business relations counterclaim. There are six elements to this tort:

1. The existence of a valid business relationship or expectancy;

2. Defendant's awareness of the relationship or expectancy;

3. Defendant interfered intentionally;

4. The motive behind the interference was improper;

5. Causation; and

6. Special damages.

Analysis of these elements focuses primarily on motive; [t]o prevail under this theory of liability, the party seeking recovery must show malice or some significantly wrongful conduct.

*Davenport*, 698 S.W.3d at 156 (internal quotation marks and citations omitted).

As previously mentioned, this counterclaim claimed that, by threatening to file a lawsuit and then following through on doing so, Appellants were interfering with its ability to acquire the Trust property pursuant to the right of first refusal agreement. Appellants claim that the Board cannot succeed on this claim because of the judicial statement privilege. This privilege

affords an absolute privilege to statements made preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding and that have some relation to a proceeding that is contemplated in good faith and under

-17-

serious consideration. It applies with equal force to statements in pleadings filed in judicial proceedings.

*Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. App. 2014) (internal quotation marks and citations omitted). However, "the privilege is only applicable to communications and has no application where it is alleged the conduct of the tortfeasor serves as the basis for the claim." *Id.* at 185. This is relevant to our case because the Board has alleged that the actions of Appellants, the filing of the lawsuit, is what they have based their counterclaim on, not any statements made in the pleadings. In fact, this Court in *Harrodsburg Industrial Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. App. 2005), stated that the institution of a groundless lawsuit may justify an improper interference claim.

We believe that the Board has raised a *prima facie* claim for tortious interference with business relations. The Board and the Trust were engaged in business relations and Appellants were aware of this. The Board has alleged that Appellants only filed their lawsuit in order to stop their purchase of the Trust property or coerce the Trust into not following through with the purchase contract. We note that, even though Appellants named the Board as a party to their complaint, Appellants brought no claims against the Board. The only claims raised by Appellants were against the Trust and trustees. We conclude that the Board has provided sufficient evidence to maintain its claim, at least at this point, that

-18-

Appellants' causes of action against the Trust were used to interfere with the

business relationship between the Board and the Trust.

> We now move on to the abuse of process counterclaim.

> [A]n action for abuse of process is the irregular or
> wrongful employment of a judicial proceeding[,] and has
> two essential elements: 1) an ulterior purpose, and 2) a
> willful act in the use of the process not proper in the
> regular conduct of the proceeding. We emphasized . . .
> that some definite act or threat not authorized by the
> process, or aimed at an objective which is not a
> legitimate use of the process was required. The act or
> threat usually manifested by some form of coercion to
> obtain a collateral advantage, not properly involved in the
> proceeding itself, such as the surrender of property [or]
> the payment of money using the process as a threat or a
> club. The process is used as a form of extortion, and it is
> what is done in the course of negotiation, rather than the
> issuance or any formal use of the process itself, which
> constitutes the tort. Notably, our analysis . . .
> incorporates the concept that there is no liability where
> the defendant has done nothing more than carry out the
> process to its authorized conclusion even though with
> bad intentions.

*Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010)

(internal quotation marks and citations omitted). It is also an abuse of process to

"initiate a legal action for an improper purpose (demanding a result not authorized

by applicable law) after threatening to do so unless the unauthorized result is

granted." *Id.* at 119.

Appellants argue that this claim must fail because the lawsuit was

initiated in order for them to purchase the Trust property and there are no ulterior

-19-

or improper purposes. The Board argues that the lawsuit was aimed at forcing the Board to pay more for the Trust property than they contracted and/or to coerce the Board into preserving the William Bush House, neither of which is an authorized remedy in Appellants' lawsuit against the Trust. We agree with the Board. The Board has alleged that Appellants are trying to force the Trust into selling the property for over $1.9 million, even though the Board has a contract to purchase the property for less. In addition, the Board has alleged that an e-mail from the Trust stating that Appellants' offer was acceptable is not a valid contract and that Appellants know this; however, they are maintaining this lawsuit in bad faith. Finally, the Board claims that Appellants' only concern is preserving the William Bush House and that Appellants would be willing to abandon the lawsuit should the Board agree to such.[4]

Based on the record, the allegations in the counterclaims, and our standard of review,[5] we conclude that the Board has provided a *prima facie* case for this counterclaim. The Board's claims indicate alleged collateral advantages sought by Appellants in filing their lawsuit. This is enough to survive the KUPEPA motion.

---

[4] An article appears in the record where Appellants gave an interview to a reporter and stated that the preservation of the William Bush House is the main goal and they want the Board to make concessions to do so.

[5] As previously discussed, we review KUPEPA decisions as if it were a motion to dismiss or motion for summary judgment.

Appellants raise other issues on appeal; however, they are contingent on a finding that the trial court erred in dismissing their KUPEPA motion. Since we have held that the court did not err, these other issues are moot.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court. While the court may have erred in holding that the real property exception in KUPEPA applied, it did not err in concluding that the Board's allegations were sufficient to defeat the KUPEPA motion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

R. Kenyon Meyer
Juels M. White
Louisville, Kentucky

BRIEF FOR APPELLEE HARDIN COUNTY BOARD OF EDUCATION:

Ambrose K. O'Bryan
Radcliff, Kentucky